## WALLACE et v NORTHERN OHIO TRACTION & LIGHT CO et
(4 Cases)

*Ohio Appeals, 9th Dist, Summit Co*

Nos 2840, 2841, 2844 & 2845.

Decided May 18, 1937

H. W. Schwab, Akron, W. E. Pardee, Akron, and Clarence L. Becker, Akron, for appellants William S. Wallace et, and E. J. Rhiel et.

Howard L. Weaver, Akron, Paul W. Vale, Akron, Edward N. Heiser, Akron, Donald Gottwald, Akron, and John H. T. Miller, Cleveland, for appellants James E. Huntone et.

R. H. Nesbitt, Akron, R. G. Jeter, Akron, and G. H. Doolittle, Akron, for appellees The Northern Ohio Traction & Light Co. et.

W. E. Holden, Akron, for appellees William H. Stanley et.

ROSS, PJ, HAMILTON and MATTHEWS, JJ, (1st Dist) sitting by designation.

## OPINION

By ROSS, PJ.

These cases were all presented to the court at one time. Nos. 2840 and 2844 are appeals on law and fact. Nos. 2841 and 2845 are appeals of the same cases upon questions of law. The original cases being unquestionably chancery cases, may, therefore, be heard by this court as appeals on questions of law and fact and are now so considered. Counsel have consented to the dismissal of the law appeals. The two law and fact cases, Nos. 2840 and 2844 are consolidated and heard together. Proper provision will be made in judgment entries embodying the foregoing.

The several appellees became merged or absorbed by the appellee Ohio Edison Company, which assumes the liabilities, if any, as far as this litigation is concerned of its fellow appellees. This corporation will be hereinafter styled and referred to as the company.

The Northern Ohio Traction & Light Company, one of the company's predecessors, in 1910 adopted a pension plan for its employees, some of whom continued their employment with the successor company.

This plan is embodied in the following resolution of the board of directors of the traction company:

"The following plan for the creation of a pension fund for employees who have grown old in the service or become totally disabled in the performance of their duties, was submitted, and after a thorough discussion thereof, on motion duly seconded and unanimously carried, the same was adopted and approved.

"To the Board of Directors,

"The Northern Ohio Traction & Light Company.

"Gentlemen:

"The committee appointed by your board, for the purpose of framing a proposition for the creation of a pension fund for our employees, beg to submit the following:

"(1) Any employee attaining the age of 65 years, will be subject to retirement, providing such employee has given continuous service for twenty years.

"(2) Any employee who has given continuous service for the company for twenty years, and who is required by the pension board to be retired, will be entitled to a pension.

"(3) The amount to be paid for pensions, to be 40% of the employee's wages so retired, on a basis of 10 hours per day at the rate which the employee is drawing at the time of such retirement.

"(4) Any employee who should become totally and permanently disabled while in the service of the company while on duty, and said disability is not caused by his own negligence, is to be retired on pension, provided such finding is made by the pension board.

"(5) Any employee injured while in the service of this company, shall receive during the period of total disability the pension provided for in §3, for such period of time as the pension board may fix, provided said disability has not been proximately caused by his own negligence.

"(6) Any employee receiving any compensation under the provisions of this board shall accept such compensation in full for all claims for damages by reason of any alleged or claimed negligence on the part of this company.

"(7) If any employee after being pensioned by the company, is able to perform duties in any capacity outside of the company's employ, this fact will not bar him from securing his pension from this company.

"(8) The pension board to consist of the president, vice president, general manager, general superintendent, and three men from the employees selected by the above officials.

"(9) One quarter of 1% of the gross earnings to be charged off monthly, and the amount deposited in a 'special pension fund.' The company to set aside in the hands of a trustee at once $100,000.00 of 4% bonds, this amount to be held by said trustee in a 'special pension fund' until there is accumulated in cash the amount of $25,-000.00. When 'special pension fund' shows a balance in cash of $25,000.00, the company will be allowed to withdraw the deposit of 4% bonds, and may from time to time reduce the percentage of gross earnings credited monthly to said fund, in excess of an amount sufficient to maintain a balance in said fund of $25,000.00.

"(10) The surplus of said pension fund, if any, to be reinvested for the benefit of the pension fund, at the discretion of the pension board.

"(11) Said pension board shall have power to adopt reasonable rules and regulations for the transaction of business pertaining to the making and filing of claims for benefits under said pension fund as in their judgment may be deemed expedient, and said board shall also have power to pass upon the claims of persons claiming the right to share in said pension fund and all other matters pertaining to the disbursement of moneys of said fund.

"(12) Pension fund effective April 1, 1910.

"Respectfully submitted,

"Will Christy,
"1st Vice President.
"Chas. Currie,
"2nd Vice President and Gen. Mgr."

On February 17, 1913, the pension board passed the following resolution:

"All employees entering the service of the company at the age of 50 years or over, will be compelled to waive all right to participate in permanent pension for twenty years."

On August 21, 1930, the board of directors of the Ohio Edison Company took the following action:

"Upon motion duly made and seconded, the following preamble and resolutions were thereupon unanimously adopted:

"'Whereas: At a meeting of the board of directors of Northern Ohio Traction & Light Company, predecessor of Northern Ohio Power & Light Company, predecessor of Ohio Edison Company, held on the 25th day of March, 1910, a resolution of the board of directors of said company was adopted authorizing the establishment of a pension plan for the employees of said Northern Ohio Traction & Light Company; and

"'Whereas: Said pension plan is impracticable and it is deemed inadvisable by the board of directors of this company to enlarge said plan in its application to employees of Ohio Edison Company other

than those who were, prior to the consolidation forming Ohio Edison Company, employees of Northern Ohio Power & Light Company:

" 'Now, Therefore, Be It Resolved: That said pension plan be limited in its application and benefit to the employees of Ohio Edison Company who were in the employ of Northern Ohio Power & Light Company on July 5, 1930 (date of the consolidation); and

" 'Be It Further Resolved: That the officers of Ohio Edison Company be and they hereby are authorized and empowered to give such notice to the employees of Ohio Edison Company as shall be deemed by said officers sufficient to notify the employees of said Ohio Edison Company of the above said limitation of the application of said pension plan'."

And, on December 19, 1930, abrogated the pension system by passing the following resolution:

"Upon motion duly made and seconded, the following resolutions were presented:

" 'Resolved: By the board of directors of Ohio Edison Company that the pension plan heretofore in effect for the employees of said company and of the company's predecessor The Northern Ohio Traction & Light Company (by change of name, Northern Ohio Power & Light Company), be and the same is hereby terminated effective as of January 1, 1931; and

" 'Resolved Further: That the fund now on hand be set aside and used for the purpose of continuing the payment of pensions to such former employees of said Ohio Edison Company and its predecessor as are receiving such pensions on January 1, 1931'."

The last meeting of the pension board was April 23, 1930.

On February 6, 1931, the company turned over to its general treasurer securities approximating some $50,000, which had theretofore been in the custody of the pension board.

Owing to the cessation of rail activity, the company released all employees engaged in this department on April 18, 1931.

The several acts of the company and its predecessors, heretofore noted, thus resulted in the creation of at least three general classes of employees, as follows:

First: Those who had reached the age of 65 years, and had twenty or more years of service with the company or its predecessors, prior to the date of abrogation of the pension plan, January 1, 1931, and had been required by the pension board to be retired and are now receiving pensions.

Second: A class who had twenty or more years service with the company or its predecessors before the date of abrogation, but had not reached the age of 65, or been required to retire by the pension board, although they were in the employ of the company when age 65 was reached and the twenty years of service had matured.

Third: A class which did not reach the age of retirement or twenty years service until after the general discharge of all employees engaged in the transportation division of the company's activities.

A number of suits at law were filed upon claims asserted by the several interested employees; and the instant actions were instituted by three plaintiffs in a representative capacity for all employees of The Northern Ohio Traction & Light Company similarly situated, claiming an interest in the pension fund as hereinbefore set out. In the latter actions, the plaintiffs sought to restrain any diversion of the pension fund inconsistent with their rights therein, to secure an accounting, to have the fund administered by the court, to permit all those properly qualifying under the plan to participate therein, and to require the corporation to make due and proper provisions for the presence of funds available for those held to be entitled to participate therein.

The suits at law were based upon the theory of contractual obligation, and were for specific amounts alleged to be due by reason of the compliance of the plaintiff employees with the terms of the contract for pension.

The company by its cross-petition set up the multiplicity of suits, and, seeking the aid of a court of equity, asked that all matters affecting the interests of the employees under the pension plan be adjudicated, and that all such employees who had filed actions either in a representative capacity or individually be made parties.

The consolidated cases, as thus presented to this court upon appeal, present all the sundry and various questions incident to a proper adjudication of the rights of the employees of the traction company as the same may fall within the several classes regulated by the peculiar facts applicable to the members of each group.

As to those who are now receiving pensions, we find no reason for making any order, as it is admitted that they are entitled to continue to participate in the

fund, which, while now in the hands of the treasurer, will be subject to their claims as long as they continue to live. It is further apparent and is admitted that, if no further allowances are made against the fund, it is adequate for those who now are admitted to be entitled to participate therein. We do not pass upon this point.

As to those persons who were not 65 or who had not had twenty years of service at the time of their discharge, we find no difficulty in finding that they are not entitled to participate in the fund. Our reasons for such conclusion will be apparent from what is said hereinafter in passing upon the claims of the remaining class who were 65 years of age and had twenty years of service at the time of their discharge, but were either not 65 years of age or did not have twenty years of service at the time of abrogation of the pension plan by the company.

There is no suggestion, and if there were it would have no basis in proof, that the discharge of the employees was not fortuitous, logically required by the economic situation, and the necessary abandonment of the further operation of the traction lines. This is not a case where an employee is discharged as an isolated case as he nears the point of advantage. That two of the employees were very close to the qualifying period at the time of abrogation is, of course, subject for consideration, but as many others were involved in the later discharge which was caused by the abandonment of operations, we are unable to find anything inequitable in the discharge itself. **Wilson v Rudolph Wurlitzer Co., 48 Oh Ap 450; Sigman v Rudolph Wurlitzer Co.,** decided by Court of Appeals, First Appellate District, February 8, 1937 While the element of discharge was considered, it was not conclusive. In the Wurlitzer cases it is to be remembered the employees had completely fulfilled the pension requirements before discharge, and there had in neither of these cases been any attempted abrogation of the pension agreement.

Those who had reached twenty years of service and were 65 years of age at the time of discharge would be affected to some degree at least by the Wurlitzer cases, were it not for the feature here present and not heretofore considered by this court —to-wit, the right in the company to withdraw its offer and abrogate its pension system as to all those who had not at that time qualified under the terms of the offer.

There are presented the following questions: When the pension plan was inaugurated, could it be withdrawn and abrogated? If so, when could this be done?

It is the contention of the employees that if the company could abrogate it, this must be done before substantial compliance with the terms of the requirements had been made. Fifteen years, ten years, five years, are suggested. Why not a year, a month, a day? What is the difference between one period and any other? No citation of authority is necessary to sustain the contention that an offer may be withdrawn at any time before it is accepted in its terms. What term of employment is necessary to constitute an acceptance?

This court has held consistently that pension and bonus plans constitute a continuing inducement to the employee to continue his loyal service to the company. Such continuance in the employment of the company under this inducement constitutes the consideration moving from the employee. On the other hand, the terms of the offer are always apparent to the employee, and this court cannot write into the agreement features either in the interest of or against the interest of either party.

Each employee of the company knew that the inducement to continued service was a pension. Undoubtedly this was effective in inducing many to remain in the employ of the company. At the same time each employee knew that he must put in twenty years of service and reach the age of 65 years before he was entitled to be considered for a pension. The general abandonment of the plan was another eventuality, which, while it was to be deplored, was still a feature to be considered. The employee had not contributed anything except possibly his sacrifice of other employment. He could at any time cease his employment.

We are constrained to hold that, under the circumstances presented, there being no suggestion of bad faith, the company could, at any time before the employee actually qualified under the terms of the offer of pension, withdraw the same. To hold otherwise is to become involved in a discussion of purely ethical questions with no pertinent rule of law or related principle in equity to form a standard for our conclusion.

**464**

Special stress has been laid upon the situation presented by two employees, who had qualified after abrogation and before discharge. It would seem that a liberal policy on the part of the company would extend to these a waiver of the strict rights maintained. However, again as to these, we would be compelled to find substantial compliance with the requirements in order to extend them relief. Again, we would be confronted with the question as to where this line of demarcation began and ended. How wide was this No Man's Land? We deplore the result, but must confine ourselves to rules of law and principles of equity as these have been generally recognized in the administration of justice in courts of law and chancery.

Our conclusion is that a like decree to that entered in the Court of Common Pleas of Summit county may be here entered as the decree of this court.

HAMILTON, J., and MATTHEWS, J., concur.