SAMUEL J. COPPOLA AND ANGELINA COPPOLA, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77774. Filed December 9, 1960.

*Charles Feit, Esq.*, for the petitioners.
*Douglas D. Robertson, Esq.*, for the respondent.

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax for the taxable years ended December 31, 1955, 1956, and 1957 in the amounts of $6,225.53, $1,308.33, and $603.96, respectively.

The only error assigned is that "The Commissioner has erroneously included as taxable income the employer's contribution to pension plan of * * * $20,000 in 1955, $3,000 in 1956, and $3,000 in 1957."

### FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

Petitioners are husband and wife who reside in Hamden, Connecticut. They filed joint Federal income tax returns for the calendar years 1955, 1956, and 1957 with the district director of internal revenue at Hartford.

Since 1937 Samuel J. Coppola (herein sometimes referred to as petitioner) has been in the continuous employ of Local Union 478–A–B–C of the International Union of Operating Engineers (herein sometimes referred to as local 478) either as a business agent or as the business manager. Local 478 is an exempt labor organization under section 501(c)(5) of the Internal Revenue Code of 1954.

Petitioner was born May 26, 1894; his wife was born March 11, 1924; and their three children, Samuel, Jr., William, and Joseph, were born April 3, 1946, January 7, 1950, and January 24, 1955, respectively.

Article II, section 9, of the constitution and bylaws of local 478 provides:

Any Business Manager or Agent who has faithfully represented the Local Union for a period of more than fifteen (15) years may, upon vote of the Local Union, be entitled to a pension in an amount fixed by the membership available only if such Business Manager or Agent is forced to retire from his duties, due to his physical condition or age. No such pension or pensions shall be granted save upon the approval in writing of the General President and all such pensions shall be reasonable and non-discriminatory.

Article I, section 1, of the constitution and bylaws of local 478 provides that local 478 and its members are subject to the provisions of the constitution of the International Union of Operating Engineers (herein sometimes referred to as IUOE), which was organized in 1896. Article XXVI of the constitution of IUOE provided for "The General Pension Fund Plan." Section 6 of article XXVI provided:

Each participating member of the Plan, on reaching sixty-five (65) years of age and who has completed not less than ten (10) years of employment, if in the employment of the local union at the time shall be deemed to have reached retirement status and to have become eligible for retirement. This shall be known as attaining retirement status. Beginning on the date the member actually retires, after attaining retirement status, he shall be entitled to receive, and there shall be paid to him from the General Pension Fund, annual pension benefits in monthly installments for the remainder of his life.

On March 20, 1955, a motion was made and seconded by the executive board of local 478 and unanimously approved that—

at the time of retirement of Business Manager, Samuel J. Coppola, (Reference Section 9, Article 2 of the By-Laws) the amount of money to be paid by Local 478 * * * shall be $300.00 per month for life as pension. In case of death his widow shall receive the same amount of money until his children become 18 years of age.

On July 20, 1955, the corresponding secretary of local 478 addressed a letter to the general president of the Union enclosing a copy of the above-mentioned resolution approved on March 20, 1955, and stated:

As you know his health has not been the best during the past few years and he has not been able to carry on as he would like. We hope his health improves so that he will be able to continue as Business Manager of the Local for many years to come. If, however, he is unable to do so, we trust that the enclosed resolution relating to a retirement pension for him will meet with your approval.

On August 28, 1955, a motion was made and seconded by the executive board of local 478 and unanimously approved that local 478 withdraw from its treasury the sum of $20,000 to establish a pension plan for petitioner and that each year thereafter the sum of $3,000 be added thereto.

On October 20, 1955, the general president of IUOE addressed a letter to the corresponding secretary of local 478 acknowledging the latter's letter of July 20, 1955, and stated that "upon motion, it was unanimously decided that the resolution as presented be approved, subject to the matter being presented and concurred in at a regular meeting of Local Union #478 and spread upon the minutes thereof."

At the regular monthly membership meeting of local 478 held on November 11, 1955, the following resolution regarding a retirement

pension for petitioner was unanimously adopted and signed by 12 members of the executive board:

WHEREAS it has become the accepted practice in private and governmental employment to reward faithful service of long tenure by way of pension and

WHEREAS the members of Labor have gradually been awarded several of the rights, benefits and protection hereto held exclusively for the members of Management as the result of wise and far reaching collective bargaining and,

WHEREAS Brother Samuel J. Coppola has devoted over a quarter of a century of faithful, loyal and conscientious service and counsel in strengthening and guidance of Local Union #478 which has grown to the forefront among the progressive and liberal minded units in the field of Labor and,

WHEREAS Brother Samuel J. Coppola has reached a condition of health whereby he no longer can continue in day to day harness with the same vigorous manner that has long characterized his service. Now therefore be it

RESOLVED that it is altogether fitting and proper that we the members of the Executive Board of Local Union #478 should recognize fully the great unselfish service that has brought recognition and stature to our local Union by unanimously recommending to the General Membership that Brother Coppola be rewarded with a retirement pension and be it further,

RESOLVED THAT THE GENERAL MEMBERSHIP of Local Union #478 show their appreciation for his loyal and faithful service by permitting him on retirement a life pension in the sum of ($300.00) per month.

On November 20, 1955, a motion was made and seconded by the executive board of local 478 and unanimously approved that the president and other officers of local 478 "be authorized to execute with the Tradesmens National Bank of New Haven, Conn. as Trustee, a Trust Agreement creating the Samuel J. Coppola Retirement and Pension Trust."

On November 22, 1955, a trust indenture was entered into by local 478 and the above-mentioned bank, as trustee, creating the "S. J. Coppola Retirement and Pension Trust," the material provisions of which are as follows:

THIS TRUST INDENTURE, made this 22nd day of November, 1955 by and between Local 478 * * *, hereinafter referred to as the "EMPLOYER" and the "TRADESMENS NATIONAL BANK OF NEW HAVEN", * * * hereinafter referred to as the "TRUSTEE", WITNESSETH THAT:

WHEREAS the Employer desires to establish a Retirement and Pension Trust for the benefit of its Business Manager, Samuel J. Coppola, who has faithfully served said Employer for many years and is still serving the same and in order to provide certain financial protection for said Employee and his dependents on his retirement and/or in event of his death.

Now THEREFORE in consideration of the premises and the mutual covenants herein contained, the Employer has conveyed, granted, assigned and delivered to the Trustees [$20,000] * * *.

To HAVE AND TO HOLD NEVERTHELESS for the following uses and purposes and subject to the terms of conditions, powers and agreements hereinafter set forth:

(a) To invest, reinvest and from time to time to change investments for the same and to receive the income from the rents, issues and profits arising therefrom and to receive such additional property or cash from the Employer as from time to time authorized by said Employer for the use of said Trust.

(b) To pay to said Samuel J. Coppola, when said Trustee has been duly notified in writing by the Employer, that said Employee has been retired the sum of * * * ($300.00) * * * per month for the period of his life.

(c) And in the event of the death of said Employee prior to retirement or subsequent thereto, he leaving issue surviving him under the age of 18 years, said sum of * * * ($300.00) * * * per month shall be payable by the Trustee to the natural or legal guardian of such issue for the benefit of said issue until the same shall arrive at the age of 18 years. After the last of said issue shall arrive at the age of eighteen years said Trust shall terminate and the principal and income thereof remaining shall be transferred to the Employer * * *.

(d) In the event of the death of said Employee, leaving a widow but no issue surviving, said Trustee shall pay from said Trust, to the widow the sum of * * * ($3600.00) * * *. On receipt of said sum by the widow, the Trust shall terminate and the principal and income thereof remaining shall be transferred to the Employer * * *.

(e) In the event of the death of the Employee leaving no widow or issue surviving him under the age of 18 years, said Trust shall be terminated and the principal and income thereof remaining shall be transferred to the Employer * * *.

(f) In the event of the Employee's death leaving issue surviving under 18 years of age and if such issue shall die before arriving at the age of 18 years, on the death of such issue said Trust shall terminate and the principal and income therein remaining shall be transferred to the Employer * * *.

\* \* \* \* \* \* \*

This Trust has been created under the laws of the State of Connecticut, and its validity, construction and administration shall be determined by the laws of that State.

\* \* \* \* \* \* \*

The Trustee further agrees to make no investments from said Trust Fund without the written approval of the Employee-Beneficiary.

The Employer may amend said Trust Indenture but cannot amend to decrease the benefits to said Employee-Beneficiary or his dependent beneficiaries, herein set forth.

At the time the above-mentioned trust was created, local 478 had one business manager, namely, petitioner, and three business agents whose duties commenced at various times in 1953.

On April 8, 1957, paragraphs (b), (c), and (d) of the trust indenture entered into on November 22, 1955, were amended so that the payments therein provided for would be increased to $100 per week instead of $300 per month.

Local 478 made payments to the S. J. Coppola retirement and pension trust in the years 1955, 1956, and 1957 in the amounts of $20,000, $3,000, and $3,000, respectively. Petitioners did not include any of these payments as income in their returns for the years in question. The respondent determined that such payments should be included as taxable income for each of the taxable years here involved. In a statement attached to the deficiency notice, the respondent explained his adjustment for the year 1955 as follows:

(a) Employer contribution of $20,000.00 to the S. J. Coppola Retirement and Pension Plan is included as taxable income since the pension plan does not meet the requirements of Section 401(a) of the Code and therefore the trust is not exempt from income tax under Section 501(a) of the Code.

A similar explanation was given by the respondent for the adjustment of $3,000 in each of the years 1956 and 1957.

### OPINION.

Petitioners have not questioned that portion of the respondent's "Explanation of Adjustments" contained in the statement attached to the deficiency notice wherein he stated that "the pension plan does not meet the requirements of Section 401(a) of the Code and therefore the trust is not exempt from income tax under Section 501(a) of the Code." The parties have stipulated that local 478 itself "is an exempt labor organization under Section 501(c)(5)" of the Internal Revenue Code of 1954. But in regard to the S. J. Coppola retirement and pension trust, the parties have narrowed the precise issue before us to whether petitioner's beneficial interest in the payments made by local 478 to the trust were "nonforfeitable" as that term is used in section 402(b) of the 1954 Code.[1]

Petitioners contend that petitioner's beneficial interest in the payments made by local 478 to the trust were forfeitable; respondent contends they were nonforfeitable.

. Both parties cite and rely on section 1.402(b)–1 of the Income Tax Regulations under the 1954 Code (Publication No. 329–2), the material part of which is set forth:

Sec. 1.402(b)–1 TREATMENT OF BENEFICIARY OF A TRUST NOT EXEMPT UNDER SECTION 501(a).—(a) *Taxation by reason of employer contributions.*—(1) * * * any contribution made by an employer on behalf of an employee to a trust during a taxable year * * * of the trust for which the trust is not exempt under section 501(a), shall be included in income of the employee for his taxable year during which the contribution is made if the employee's beneficial interest in the contribution is nonforfeitable at the time the contribution is made. * * *

(2)(i) An employee's beneficial interest in the contribution is nonforfeitable within the meaning of sections 402(b) * * * at the time the contribution is made if there is no contingency under the plan which may cause the employee to lose his rights in the contribution. For example, if under the terms of a pension plan, an employee upon termination of his services before the retirement date, whether voluntarily or involuntarily, is entitled * * * to annuity payments which the trustee is obligated to make under the terms of the trust instrument

---

[1] SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

(b) TAXABILITY OF BENEFICIARY OF NON-EXEMPT TRUST.—Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt from tax under section 501(a) shall be included in the gross income of an employee for the taxable year in which the contribution is made to the trust in the case of an employee whose beneficial interest in such contribution is nonforfeitable at the time the contribution is made. * * *

based on the contributions made by the employer on his behalf, the employee's beneficial interest in such contributions is nonforfeitable.

(ii) On the other hand, if, under the terms of a pension plan, an employee will lose the right to any annuity purchased from, or to be provided by, contributions made by the employer if his services should be terminated before retirement, his beneficial interest in such contributions is forfeitable.

The above regulations further narrow the issue before us to whether petitioner would be entitled to the annuity payments provided for in subparagraph (b) of the trust instrument, if his services were terminated, either voluntarily or involuntarily, *before the retirement date*, or whether upon such termination of services, he would lose the annuity payments provided for in the trust instrument.

Petitioner's "retirement date" was not specified in the trust instrument. Neither was it specified in any of the resolutions dealing with the proposed pension. The constitution and bylaws of local 478 make no reference to any retirement date as such. They do provide that any business manager who has faithfully represented the local for a period of more than 15 years *may* be entitled to a pension *only* if he is forced to retire "due to his physical condition or age." But they do not designate the age at which he may be forced to retire. In the letter to the general president of IUOE, dated July 20, 1955 (when petitioner was 61), the corresponding secretary of local 478 said it was the hope of the local that petitioner would be able to continue as business manager "for many years to come." Petitioner as a member of local 478 was subject (see article I, section 1, of constitution and bylaws of local 478) to the provisions of the constitution of IUOE. The constitution of IUOE provided for a pension plan of its own and stated that any member on reaching 65 with not less than 10 years of employment shall be deemed to have reached retirement status and to have become eligible for retirement. At the time the proposed pension was voted, petitioner had faithfully represented local 478 for more than the 15 years specified in article II, section 9, of the constitution and bylaws of the local. We may assume from the foregoing that for the purposes of this case petitioner's "retirement date" was May 26, 1959, unless he were forced to retire before such date due to his physical condition. The latter did not happen during the taxable years before us.

Under the trust agreement, petitioner was not entitled to receive any annuity payments until the trustee had been duly notified in writing by the employer that he had been retired. No such notice was given during the taxable years before us. It is entirely possible that no such notice might ever be given. Local 478 did not unequivocally and in all events grant petitioner a pension. Petitioner might voluntarily resign prior to the retirement date. He might fail

to be reelected to office. Article VIII of the constitution and bylaws of local 478 lists about 16 separate acts, the perpetration of any one of which "shall constitute conduct discreditable to" IUOE and local 478, and upon conviction thereof, the offender may, under article XVI of the constitution of IUOE, be expelled from the union. If any of these events should occur, it is quite likely the employer would refuse to notify the trustee in writing that petitioner had been retired, and it is doubtful if petitioner could force his employer to do so. Cf. *Wallace* v. *Northern Ohio Traction & Light Co.*, 57 Ohio App. 203, 13 N.E. 2d 139 (1937).

The prototype of section 402(b), *supra*, was section 165(c), I.R.C. 1939, as amended by section 162(a) of the Revenue Act of 1942. The amendment adopted in 1942 presented "no apparent change in Congressional purpose." See *Hubbell* v. *Commissioner*, 150 F. 2d 516 (C.A. 6, 1945), affirming 3 T.C. 626; *David Watson Anderson*, 5 T.C. 1317, 1324. In a case like the present one, the test being applied at the time of the amendment adopted in 1942 was whether the employee had constructively received as additional compensation the contribution made to the trust by the employer. *Julian Robertson*, 6 T.C. 1060. In that case we held for the taxpayer under facts very similar to the instant case. Robertson had entered into an employment contract and trust agreement which contained retirement benefits and provided for the loss of those benefits if the taxpayer ceased to be an employee of his own volition or was discharged for cause prior to the expiration of his employment. In the course of our opinion, we said:

It is clear that the motivating reason for the execution of the employment and trust agreements was to induce petitioner to remain in his employment with the companies. If he ceased to be an employee of his own volition of the corporation or if he was discharged for proper cause or reason prior to the expiration of the designated term of employment, he and his family would lose all rights or interests in the trust estate.

In the instant case petitioner did not actually receive, during the taxable years before us, any of the $26,000 contributed to the trust by the employer. The trust agreement in subparagraphs (c) through (f) contains conditions whereby the trust "shall terminate and the principal and income thereof remaining shall be transferred to the Employer * * *." To tax petitioner on whatever sum the union should see fit to place in the trust, although some or all of it might well be returned to the employer, illustrates how unrealistic the respondent's position herein could become.

Under the first example given in the above regulations, if petitioner's services had terminated "before the retirement date" either voluntarily or involuntarily, petitioner would not have been entitled

to any annuity payments for the reason that the trustee was under no obligation to make any under the terms of the trust instrument. There was no certainty during the taxable years before us that petitioner would ever get any benefit from the trust. That benefit could be lost if his services were terminated before retirement, under which circumstances there would be no occasion for the employer to notify the trustee that petitioner had retired.

We hold that petitioner's beneficial interest in the contributions made by local 478 to the trust during the taxable years 1955 through 1957 were forfeitable at the time the contributions were made and that, therefore, such contributions are not includible in the gross income of petitioners for those years. Cf. *Harold G. Perkins*, 8 T.C. 1051, 1056.

*Decision will be entered under Rule 50.*