ESTATE OF JAMES MAX HARRISON, DECEASED, MARY FRANCES HARRISON, EXECUTRIX AND MARY FRANCES HARRISON, SURVIVING WIFE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MARY FRANCES HARRISON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5641–71, 5642–71. Filed July 25, 1974.

*Vincent F. Kilborn III*, for the petitioners.
*Roy S. Fischbeck*, for the respondent.

STERRETT, *Judge:* The respondent determined deficiencies in petitioners' Federal income taxes and additions thereto under section 6653(a), I.R.C. 1954,[1] as follows:

| Petitioner | Docket No. | Year | Deficiency | Addition to tax |
|---|---|---|---|---|
| Estate of James Max Harrison, deceased, Mary Frances Harrison, executrix, and Mary Frances Harrison | 5641–71 | 1965 | $28,047.39 | $1,402.37 |
| Mary Frances Harrison | 5642–71 | 1966 | 14,108.21 | 705.41 |
| | | 1967 | 1,575.45 | 78.77 |

Certain issues having either been conceded or not raised in the petition, the remaining issues presented for determination are: (1) Whether $50,000 placed in trust in 1965 and payable in five annual installments to James Max Harrison or his heirs pursuant to a consulting agreement, including a provision not to compete, is taxable income in that year; (2) whether expenses incurred in moving from New Jersey to Alabama are deductible moving expenses within the intendment of section 217 where James Max Harrison only continued his duties as administrator of certain pension funds; (3) whether the income of a trust, which was required to be distributed at least annually to Mary Frances Harrison but part of which was actually distributed to her children, is taxable to said petitioner; and (4) whether petitioners are subject to the additions to tax for the taxable years in question under section 6653(a).

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended and applicable to the taxable years involved, unless otherwise indicated.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

James Max Harrison (hereinafter referred to as the decedent or, in conjunction with Mary Frances Harrison, as petitioners) was a resident of Mobile, Ala., at the time of his death on April 4, 1966. The decedent was survived by his wife Mary Frances Harrison (hereinafter referred to as Mrs. Harrison or petitioner), who was appointed executrix of his estate on June 1, 1966. Mrs. Harrison's legal residence at the time of the filing of the petitions herein was Mobile, Ala.

A joint Federal income tax return for the calendar year 1965 was filed by Mrs. Harrison, individually and as executrix of decedent's estate, with the district director of internal revenue at Birmingham, Ala. A joint Federal income tax return for the calendar year 1966 and a return as a surviving spouse for the calendar year 1967 were filed by Mrs. Harrison with the Southeast Service Center at Chamblee, Ga. The above-mentioned returns filed by Mrs. Harrison were made on the cash receipts and disbursements basis.

From a time in the early 1960's until November 1, 1965, decedent was employed as president of American Maritime Association (hereinafter referred to as AMA) in New York, N.Y. During such employment, decedent and his family resided in Short Hills, N.J.

AMA was formed in the early 1960's by various steamship companies and trade unions operating aboard company vessels for the purposes of creating and maintaining harmonious union-management relations among association members and of lobbying for favorable Federal legislation. The officers of AMA were union or management representatives, decedent being management's representative. AMA also had an advisory board of directors composed of both management and union representatives.

In 1965, one of the member unions decided that it no longer wished to do business with decedent, that as long as decedent was president of AMA it was not interested in any relationship with that organization, and that it would henceforth bargain individually with each company. However, one of the other member unions wanted to retain the services of decedent.

After negotiations between decedent and AMA's board of directors, an agreement was reached which satisfied all interests. Decedent agreed to resign as president, which he subsequently did effective October 31, 1965, and AMA agreed to retain decedent's services on a consultant basis for a period of 5 years. The pertinent parts of the agreement read as follows:

1. Association [AMA] hereby retains Harrison [decedent] as a consultant for a period of five (5) years, commencing November 1, 1965, and ending October 31, 1970, for which services the Association agreed to pay Harrison the sum of Ten Thousand and No/100 Dollars ($10,000.00) per year. Such sum to be paid from the Trust Fund to be established with the First National Bank of Mobile, as Trustee, under the terms and conditions and on the form set forth on Exhibit "A" attached hereto and made a part hereof, the payment of which Association hereby binds itself.[2]

2. Harrison agrees to keep himself available to the Association to provide such services for said term and agrees that he will not perform similar services in competition with the Association, it being expressly understood, however, that Harrison may perform the same or similar services to others not engaged in competition with the Association.

The agreement further provided that in the event of decedent's death prior to the expiration of the 5-year period, the remaining undistributed corpus and accumulated income would be paid to decedent's heirs as a death benefit.

As agreed upon, AMA deposited $50,000 in trust with the First National Bank of Mobile. The pertinent terms of the trust indenture are as follows:

WHEREAS, Grantor has entered into an employment and deferred compensation agreement with Max Harrison, under the terms of which Grantor is obligated to create a trust under the terms and conditions hereinafter provided, Now THEREFORE, in consideration of the premises Grantor does hereby deliver and pay over to Trustee the sum of $50,000.00, in cash, the receipt of which is hereby acknowledged, in trust for the uses and purposes upon the terms and conditions hereinafter stated.

### ITEM I

The Trust hereby created is irrevocable and the Grantor reserves no right, title or interest therein, or control thereof.

\*     \*     \*     \*     \*     \*     \*

### ITEM IV

Trustee shall pay to Max Harrison annually on the anniversary hereof the sum of $10,000.00, commencing on the 1st day of November, 1966, and a like installment on the same day of each succeeding year thereafter to and including November 1, 1970, on which date this trust shall terminate and the entire undistributed corpus and accumulated income shall be paid over to the said Max Harrison, his executor, administrator or assigns.

\*     \*     \*     \*     \*     \*     \*

### ITEM VIII

This Trust Agreement shall be construed and regulated according to the laws of the State of Alabama, where it is made and where it is to be enforced.

Decedent required that the $50,000 be held in trust rather than by AMA because he was afraid that, after his resignation was tendered

---

[2] Exhibit A was not introduced into evidence, but we assume that the trust indenture introduced as a separate exhibit and quoted from hereinafter was the aforenoted Exhibit A.

and accepted, certain members of AMA's board of directors would attempt to prevent him from receiving the yearly installments. Decedent wanted to be sure he would receive the installments provided he rendered the services requested by AMA. AMA never offered decedent $50,000 outright during the negotiations; nor did AMA ever offer decedent $50,000 without the condition that he act as a consultant for a period of 5 years. After his resignation as president, decedent provided consulting services to some of AMA's members as required by the agreement. The money placed in trust was compensation for decedent's rendering future services to AMA and was not separation pay.

No portion of the $50,000 deposited in trust in 1965 was reported as income on petitioners' Federal income tax return for the calendar year 1965. In his notice of deficiency respondent determined that decedent received $50,000 taxable income in 1965 resulting from the deposit of that sum in trust for decedent's benefit.

Beginning in the 1950's and continuing to his death on April 4, 1966, decedent was administrator of three welfare and pension funds for union locals in Mobile, Ala., and Pascagoula and Gulfport, Miss. Decedent's duties as administrator of each of these three funds were essentially the same.

While decedent was working for AMA in New York, he was required by the fund located in Mobile to return to Mobile for meetings of the trustees, who managed the welfare and pension plan from which the welfare and pension fund accrued. Decedent's services and duties as administrator of this fund remained substantially constant throughout the years of his tenure as administrator. From 1962 and into 1966, the address of decedent's office as administrator of this plan was listed in the minutes of the trustees meetings as 309 St. Michael Street, Mobile, Ala. The trustees meetings during that period were held at the administrator's office.

After his resignation as president of AMA decedent and his family moved to Alabama. A total of $4,625.71 was incurred as the cost of moving from Short Hills to Mobile. Of such amount $1,521.63 was incurred and paid in 1965 and the balance was incurred and paid in 1966. Mrs. Harrison claimed a deduction of $4,825.71 [3] on the Federal income tax return for the calendar year 1966 which deduction respondent disallowed.

In 1959, decedent, as grantor, and the First National Bank of Mobile, as trustee, entered into a trust agreement creating a trust of the pro-

---

[3] The $200 difference in the amount of moving expenses claimed on the return and the amount stipulated as incurred apparently represents legal fees paid because of some damage in moving.

ceeds of certain life insurance policies insuring decedent's life. This agreement provided in pertinent part as follows:

### SEVENTH

Upon and after the death of the Grantor, J. MAX HARRISON, and the collection by the Trustee of the proceeds of the policies hereunder then the Trustee shall after all proper deductions, including compensation to said Trustee; pay over and distribute the net income from said Trust in monthly or other convenient installments, but at least annually, to my wife FRANCES G. HARRISON [Mary Frances Harrison] so long as she shall live. * * *

\*     \*     \*     \*     \*     \*     \*

### NINTH

The Trustee shall in its absolute discretion make payments from principal to or for the benefit of my wife, FRANCES G. HARRISON, and any of the minor children born to our marriage in the event that my wife or minor children shall be disabled on account of illness or other infirmity or in the case of the minor children for their education, care and support. Such payments are to be made only in the event that income is not sufficient, and if in the full discretion of the Trustee they are felt to be necessary. This provision is only for the benefit of my wife, FRANCES G. HARRISON [Mary Frances Harrison] and her minor children.

According to the fiduciary income tax return for its calendar year 1967, the trust received $5,751.67 in income [4] and had distributable net income of the same amount. However, contrary to the provisions of the trust, $1,000 of this income, along with $3,000 principal, was distributed to Mrs. Harrison's children for education. The remaining income was distributed to Mrs. Harrison. On the Federal income tax return for the calendar year 1967 Mrs. Harrison reported $1,444.27 as interest income from this trust. Mrs. Harrison was told by the trust officer of the First National Bank of Mobile that distributions to her children would result in income being taxable to the children. In his notice of deficiency respondent determined that Mrs. Harrison should have reported $5,751.67 in income from this trust.

During audit of the Federal income tax returns for 1965 through 1967, the revenue agent conducting the audit found that petitioners had maintained no formal set of books with respect to their transactions. In response to the revenue agent's request for books and records used to prepare the returns, Mrs. Harrison produced file folders containing canceled checks, bank statements, check stubs, invoices, cash register tapes, and miscellaneous pieces of paper containing various notations. The revenue agent was unable to determine or verify petitioners' income for the taxable years 1965 through 1967 by means of

---

[4] We note that the parties stipulated that the trust received $5,800 in income in 1967, but the difference between the amounts stipulated and reported is unexplained.

the file contents produced by Mrs. Harrison. The revenue agent resorted to analysis of the cash disbursement journals of the pension and welfare funds administered by decedent and then by Mrs. Harrison through decedent's company, the Max Harrison Welfare Plan Consultant, Inc., in order to determine income from these sources which he found to be substantially understated by $20,660 for 1966. Petitioners had determined gross receipts for reporting purposes by totaling bank deposits at year's end.

The revenue agent proposed the assertion of the section 6653(a) penalty because petitioners' records for the years 1965 through 1967 were inadequate since he could not correctly determine income from them and because both decedent and Mrs. Harrison had the necessary expertise to keep adequate books and records since they were in the business of keeping books and accounts, which were themselves adequate, for several pension and welfare funds.

The only two adjustments proposed by the revenue agent for the taxable year 1965 were the inclusion in income of the $50,000 placed in trust in 1965 by AMA and a disallowance of travel and entertainment expenses, part of which were substantiated in conference. For the taxable years 1966 and 1967, besides the items at issue here, a number of other adjustments in the notice of deficiency were made which went unexplained and uncontested by petitioner.

In his notice of deficiency in both dockets respondent asserted a section 6653(a) negligence penalty for the 3 years in question.

### OPINION

The first issue presented for decision is whether $50,000 placed in trust in 1965 and payable in five annual installments of $10,000 each pursuant to the provisions of an employment contract and trust agreement is taxable to the decedent James Max Harrison in 1965. The decedent reported on the cash receipts and disbursements basis of accounting.

Petitioners contend, as the employment contract states, that the $50,000 was payment for future consulting services and for an agreement not to work for competitors. Petitioners then argue that the deposit of the $50,000 in trust for the benefit of decedent or his heirs is not income taxable to a cash basis taxpayer in the year of deposit where future payments from the trust are contingent upon decedent's rendering services during his lifetime when requested. It is respondent's position that the $50,000 paid in trust in 1965 was separation pay, or compensation for past services, which was nonforfeitable and hence bestowed an economic benefit in the amount of $50,000 on decedent in the year of deposit causing such sum to be taxable in

that year. Respondent further contends that, if such payment was not payment for past services, decedent's interest in the trust was non-forfeitable, and hence was taxable in 1965, because the terms of the trust entitled decedent to receive the installments whether or not he rendered the services required by the employment contract. Respondent does not contend that decedent constructively received the sum in question in 1965.

In *Commissioner* v. *Smith*, 324 U.S. 177, 181 (1945), the Court stated:

Section 22(a) of the Revenue Act [the predecessor of sec. 61, I.R.C. 1954] is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected. See *Old Colony Trust Co.* v. *Commissioner*, 279 U.S. 716, 729. * * *

Respondent points to *E. T. Sproull*, 16 T.C. 244 (1951), which employs the economic-benefit theory, and to section 402(b)[5] and the regulations thereunder [6] as controlling in the instant case. We think either theory presents the same question which will control the outcome of the instant case. That question is whether the decedent's interest in the trust corpus was subject to a condition or to forfeiture. If so, the amount placed in trust is not taxable to decedent in 1965. See *Samuel J. Coppola*, 35 T.C. 405 (1960) ; *Julian Robertson*, 6 T.C. 1060 (1946).

Respondent first argues that the money placed in trust was in fact separation pay or compensation for past services and that consequently decedent was not required to do anything further to earn or establish his right to the money in trust. Respondent thus contends that decedent's right to or interest in the trust corpus was nonforfeitable.

In support of his position that the $50,000 was separation pay,

[5] SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEE'S TRUST.

(b) TAXABILITY OF BENEFICIARY OF NON-EXEMPT TRUST.—Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt from tax under section 501(a) shall be included in the gross income of an employee for the taxable year in which the contribution is made to the trust in the case of an employee whose beneficial interest in such contribution is nonforfeitable at the time the contribution is made. * * *

[6] Sec. 1.402(b)–1 Treatment of beneficiary of a trust not exempt under section 501(a).

(a) *Taxation by reason of employer contributions.* (1) Except as provided in section 402(d), any contribution made by an employer on behalf of an employee to a trust during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt under section 501(a), shall be included in income of the employee for his taxable year during which the contribution is made if the employee's beneficial interest in the contribution is nonforfeitable at the time the contribution is made. * * *

(2)(i) An employee's beneficial interest in the contribution is nonforfeitable within the meaning of sections 402(b), 403(b), 403(c), and 404(a)(5) at the time the contribution is made if there is no contingency under the plan which may cause the employee to lose his rights in the contribution. * * *

respondent points to a conversation between decedent and his accountant wherein decedent stated he was going to receive $50,000 as separation pay. However, this accountant also stated he was under the impression that decedent would be required to provide consulting services in order to receive payment. Michael R. McEvoy, a member of AMA's board of directors and the person who acted as the go-between during negotiations between decedent and AMA's board of directors, testified that at no time did AMA ever offer decedent $50,000 without the condition that he act as consultant. After his resignation as AMA's president, decedent in fact did provide consulting services to several of AMA's members pursuant to the requirements of the employment contract. In light of the above evidence, we conclude, and have found as a fact, that the $50,000 placed in trust was compensation to be paid decedent for his rendering future services and was not separation pay.

Respondent next asserts that decedent's interest in the trust corpus was nonforfeitable because the terms of the trust stated that the trust was irrevocable and that grantor (AMA) reserved no right, title, or interest therein. Respondent points also to the fact that there were no conditions stated in the trust upon which decedent's rights therein could be forfeited. We do not agree with this position, and we hold that decedent's right to or interest in the trust corpus was conditional upon his providing consulting services when requested and upon his not working for AMA's competitors.

The trust was merely a security vehicle which assured payment to decedent of each year's installment. The trust indenture itself referred to the employment contract between decedent and AMA as the reason for its creation. Thus we think the trust indenture must be construed in conjunction with the employment contract. We think the employment contract, and hence the trust itself, contains the implicit condition that if its terms are violated (if decedent does not perform as required or if he works for a competitor), the distributions to decedent would not be forthcoming. Such failure to perform on decedent's part would discharge AMA's obligation and decedent could not claim the benefits of the contract. Such interpretation of the employment contract and trust indenture is in accord with the intention of the parties thereto as revealed in the record.

The trust officer of the First National Bank of Mobile stated during the trial that, if he were notified by AMA that decedent had violated the employment contract, he would not have paid the money to decedent as directed by the trust indenture but would have either sought construction of the documents and agreement of the parties or would have interpleaded the money in court. That the trust officer would

have honored instructions from AMA not to pay over the benefits lends further support to our holding.

Since we have determined that decedent's rights to, or interest in, the trust was conditional or forfeitable, the $50,000 placed in trust in 1965 is not income taxable to decedent in that year.

The second issue for decision is whether expenses of moving from New Jersey to Alabama are deductible under section 217.[7] After his resignation as president of AMA in 1965, decedent and his family moved from Short Hills, N.J., to Mobile, Ala. During his employment as AMA's president, decedent was also administrator of three welfare and pension funds for union locals in Mobile, Ala., and Pascagoula and Gulfport, Miss., positions which he continued to hold after his return to Mobile.

It is petitioner's position that decedent's services as administrator of the funds were those of an employee and consequently decedent's return to Mobile was connected with his employment. We note that petitioner has not claimed that decedent moved in order to become an employee of Max Harrison Welfare Plan Consultant, Inc. Respondent contends first, that decedent was an independent contractor[8] and, second, that decedent's move was not in connection with the "commencement" of work at a new principal place of work. Since we agree with respondent's latter contention, we do not herein reach the former one.

Section 1.217–1(a)(2) provides, in pertinent part, as follows:

(2) *Commencement of work.* To be deductible, the moving expenses must be paid or incurred by the taxpayer in connection with the commencement of work by him at a new principal place of work (see paragraph (c)(3) of this section for a discussion of the term "principal place of work"). * * * The term "commencement" includes (i) the beginning of work by a taxpayer for the first time or after a substantial period of unemployment or part-time employment, (ii) the beginning of work by a taxpayer for a different employer, or (iii) the beginning of work by a taxpayer for the same employer at a new location. * * *

We think decedent's move does not come within the letter or spirit of the above regulation. As for explanation (i) of the term "commencement," decedent did not in 1965 start work for the first time and since his duties as administrator after his return to Mobile remained substantially the same as before his return we cannot say that he began full-time work after a substantial period of part-time work. Clearly, definition (ii) is inapplicable since decedent did not begin work for a different employer, he just continued working as administrator for the three funds.

---

[7] SEC. 217. MOVING EXPENSES.

(a) DEDUCTION ALLOWED.—There shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee at a new principal place of work.

[8] Prior to Jan. 1, 1970, self-employed persons were not entitled to the benefits of sec. 217.

We think definition (iii) is equally inapplicable because decedent did not begin work at a new location. When decedent performed services as administrator for the fund located in Mobile it was necessary for him to return from New York to Mobile for meetings of the trustees. Decedent's office as administrator of this fund was listed in the minutes of the trustees meetings from 1962 into 1966 as located in Mobile. We assume, and petitioners have neither presented any evidence nor argued otherwise, that the same was true for the two other funds which decedent administered and that decedent performed his duties as administrator principally at or near the location of the headquarters of those two other funds rather than in New York or New Jersey. Thus we conclude, in absence of any contrary evidence, that decedent's job as administrator of the three funds did not cause him to commence work at a new principal place of work because he continued to perform the same required duties at the same locations as before the move.

We think decedent's move from New Jersey to Alabama was for personal convenience rather than in connection with a "commencement" of work as administrator of these three funds. Consequently no deduction under section 217 is allowable for his moving expenses.

The third issue presents the question of whether trust income required by a trust to be distributed at least annually to petitioner Mary Frances Harrison but which was actually distributed to petitioner's children is taxable to petitioner. Section 662(a)(1) requires inclusion in the gross income of a beneficiary of "The amount of income for the taxable year required to be distributed currently to such beneficiary, whether distributed or not."

Petitioner concedes that $4,751.67 of the 1967 trust income, rather than the $1,444.27 reported, should be included in her 1967 income, but claims that the remaining $1,000 trust income should not be income taxable to her, apparently because she did not receive it and because what the children received was actually a principal distribution or else should have been. Petitioner cites *Freuler* v. *Helvering*, 291 U.S. 35 (1934), for the proposition that erroneous payments out of trust income are not taxable to the recipient. However, the inquiry here is not whether the children received principal distributions or erroneous income distributions (as stipulated), rather it is whether petitioner was the mandatory income beneficiary, which she was under the trust instrument. Section 662(a)(1) then requires her to be taxed on the income required to be distributed to her, whether or not distributed. Since it was admitted by the trust officer of the First National Bank of Mobile during the trial of this case that any distribution to the children from income would be in violation of the trust, petitioner's

recourse is to have the trust accounting records set straight and to receive the 1967 trust income rightfully due her.

The fourth issue involves an addition to tax under section 6653(a).[9] The determination of the respondent in this regard is prima facie correct and petitioner has the burden of proving that no part of any underpayment was due to negligence or intentional disregard of respondent's rules and regulations. *Leroy Jewelry Co.*, 36 T.C. 443 (1961).

Respondent asserted the addition in question because it was his opinion that the books and records of decedent and petitioner, when considered in light of their understanding of bookkeeping, were inadequate. No formal set of books was kept and the only records produced were those contained in a file folder and consisted of canceled checks, bank statements, check stubs, invoices, cash register tapes, and miscellaneous pieces of paper containing various notations. The revenue agent who audited the 1965, 1966, and 1967 returns in question testified that he was unable to ascertain or verify taxable income for the years in question from these records.

The revenue agent further testified that he resorted to the cash disbursement books of Max Harrison Welfare Plan Consultant, Inc., in order to determine income, but only found that income from that source for 1966 was understated. Clearly, section 6653(a) requires that some part of an underpayment result from taxpayer's negligence or intentional disregard for rules and regulations and does not allow a sweeping and arbitrary assertion of the addition in all 3 years solely for inadequate bookkeeping.

As for 1965, only two adjustments were proposed by the revenue agent. One was the first issue raised in this case which we have decided in petitioners' favor and the other involved travel and entertainment expenses part of which were substantiated in conference. The fact that petitioners were unable to substantiate all of the claimed travel and entertainment expenses for 1965 does not require us to conclude that there was an underpayment of tax due to negligence or intentional disregard of respondent's rules and regulations. *John Robinson*, 51 T.C. 520, 541–542 (1968). We consequently do not sustain the addition for 1965.

As for 1966, we think inadequate bookkeeping resulted in the $20,660 understatement of income received from Max Harrison Welfare Plan

---

[9] SEC. 6653. FAILURE TO PAY TAX.

(a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES.—If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

Consultant, Inc., and that fact coupled with petitioner's expertise in bookkeeping requires us to hold that the addition for 1966 is proper. *L. Glenn Switzer*, 20 T.C. 759, 766 (1953) ; *Leslie A. Sutor*, 17 T.C. 64 (1951). We think the addition to tax for 1967 should also be sustained since petitioner failed to show that no part of the deficiency was due to negligence or intentional disregard of respondent's rules and regulations. Petitioner did not attempt to explain and did not contest herein certain adjustments proposed in the notice of deficiency which could well have resulted from inadequate bookkeeping. *Lark L. Washburn*, 44 T.C. 217, 226 (1965).

*Decisions will be entered under Rule 155.*

---

[1] All statutory references are to the Internal Revenue Code of 1954.