Samuel M. Gold, J.
This is a motion for summary judgment dismissing the first four of the six causes of action pleaded in the second amended complaint.
The causes of action sought to be dismissed are asserted on behalf of all defendant’s employees who, after having worked in its Timken Silent Automatic Division after March 31, 1945, had been discharged on or about March 31, 1955, before completing 10 years of service. The four causes of action proceed upon the theory that plaintiffs are entitled to retirement annuities which defendant, pursuant to a pension plan established for its employees in December, 1940, had purchased annually for the account of plaintiffs. No contributions were made by plaintiffs. Each of the four causes of action affected by the present motion alleges that plaintiffs’ discharges were not for unsatisfactory performance of their duties. The first cause alleges that the plan provided that if defendant should discontinue the purchase of retirement annuities, such action was not to affect retirement annuities previously purchased. It further alleges that defendant did discontinue the plan and the further purchase of annuities, as to employees of its Timken Silent Automatic Division, as a consequence of the sale of all the assets of that division on March 31, 1955. The second cause *31 alleges mat the pension plan provided that if termination of employment took place after defendant’s liquidation, retirement annuity benefits already purchased would be unaffected by such termination. It goes on to aver that defendant was liquidated “ by and to the extent of the sale * * * of all of the assets * * * of Timken Silent Automatic Division.” The third and fourth causes consist of repetitions of the allegations of the first and second, with an additional averment that plaintiffs, in reliance upon the pension plan, had accepted lower salaries than they would have been willing to take except for the benefits provided for them in the plan.
It is clear that the first four causes of action are based upon the provisions of the pension plan. Even if it be assumed, as plaintiffs claim, that their continuance in defendant’s employ at the salaries they received was in reliance upon the benefits provided for in the plan, it cannot be gainsaid that their rights must be determined by the provisions of the plan. The plan itself clearly provides that if an employee’s services are terminated before he has completed 10 years of service with defendant, “ the benefits otherwise payable hereunder to him or on his death to his beneficiary shall cease to be in effect * * * and the Retirement Annuity already purchased on his account shall be cancelled” (italics supplied). There are but two exceptions to this provision for cancellation of benefits and retirement annuities, in the case of an employee whose services are terminated before the completion of 10 years of employment: (1) if retirement annuity purchases have been discontinued by defendant in accordance with section 6 of article III of the plan, and (2) if the termination of employment occurs after ‘ ‘ liquidation, dissolution, bankruptcy, or receivership of such Principal Employer, or * * * of such Associated Employer. ’ ’
A reading of section 6 of article III of the plan reveals that what was meant by a discontinuance of the purchase of retirement annuities by defendant was a discontinuance by the ‘‘ Principal Employer ” of the purchase of retirement annuities for all its employees or a discontinuance by an “ Associated Employer ” of the purchase of retirement annuities for all its employees. The term Principal Employer ’ ’ is defined to mean the defendant, and the term “ Associated Employer ” is defined to mean a subsidiary, affiliated, or associated company. Concededly plaintiffs were employees of the “ Principal Employer.” Admittedly defendant, the ‘ ‘ Principal Employer” has not discontinued the purchase of retirement annuities for all its employees. After the sale of the division, in which plaintiffs were employed, *32 defendant continued to operate the pension plan and to purchase retirement annuities for its remaining 16 divisions, employing 1,632 men. Plaintiffs’ division had employed only 108 men, 17 of whom had at least 10 years of service and, therefore, had vested rights in the pension plan. The contention of plaintiffs, that the discontinuance of the purchase of retirement annuities for the former employees of their division was a discontinuance of purchases within the meaning of section 6 of article III, can be upheld only by interpreting that section as referring to a failure of defendant to continue purchasing annuities for any one or more employees. This would lead to an absurd result. The clear and definite provision of section 6 of article IV, that the retirement annuity of any employee whose services were terminated before they had lasted 10 years was to be cancelled, would be nullified unless defendant were to continue to purchase annual annuities for the employee whose employment had been terminated. This could not have been intended. The court holds that there was no such discontinuance of retirement annuity purchases as would entitle plaintiffs to the benefit of annuities purchased for their account prior to their discharge.
The claim that a “liquidation” occurred which, under the terms of the plan, entitled plaintiffs to the benefit of the annuities theretofore purchased for their account is also untenable in the court’s opinion. The giving up as the result of the sale of one division employing 108 men, out of 17 divisions employing 1,740 men, can hardly be construed as a “ liquidation ’ ’ of defendant within the meaning of the plan. The plan carefully differentiated between a liquidation of defendant, the “Principal Employer ’ ’ and a liquidation of a subsidiary, affiliated or associated company, defined as an “Associated Employer”. Had plaintiffs been employed by an “ Associated Employer ”, the latter’s liquidation would leave their annuities unaffected. Unfortunately for plaintiffs, however, they were employed by defendant, the ‘ ‘ Principal Employer ’ ’, whose business was not liquidated or even nearly liquidated.
Plaintiffs’ brief states that defendant could not arbitrarily prevent plaintiffs from meeting the condition of 10 years’ service imposed by the plan. No provision of the plan, express or reasonably to be implied, obligated defendant to continue to employ all satisfactory employees for at least 10 years. Under the plan, those whose services were terminated in less than 10 years, were to have rights in the plan only if defendant was liquidated or if it discontinued its purchase of annuities for its employees generally and, thereby, gave up the plan. The cases relied upon by plaintiff are inapplicable here. They relate to employees’ rights to bonuses and shares in profits, generally *33 in situations where their discharge was for the purpose of depriving them of the benefit of the promised bonuses or shares in profits. It is clear from a reading of plaintiffs’ authorities that they were predicated upon the court’s construction of the contracts or promises involved, and that the contracts or promises, had they been so worded as to negate the rights asserted by the employees, would have been given effect. In the case at bar, the provision of the pension plan for cancellation of benefits of employees with less than 10 years’ service, except in two contingencies not present here, is clear and definite and may not be disregarded.
In this connection, it is appropriate to point out that no facts are set forth in plaintiffs’ papers which would indicate, even prima facie, that the purpose of the sale of plaintiffs’ division was to deprive them of rights in the pension plan. At the time of the sale, 91 of the 108 employees of the division had less than 10 years’ service. Forty-seven of those 91 had less than five years’ service and 12 had less than two years’ service.
It is also to be noted that the fifth cause of action, which appears to be based upon representations and promises by defendant as to the nature of plaintiffs’ pension rights, is not involved upon this motion.
The words of the Circuit Court of Appeals (2d Circuit) in Schneider-v. McKesson & Robbins (Oct. Term, 1957, Docket No. 24799) are appropriate here: “ The appellants urge upon us certain equitable considerations, as, for example, their reliance upon the plan, and contend that a court of equity should fashion a remedy to prevent the injustice which it is claimed will result if they are denied participation in the fund. But, as the court below stated, there is no justification for a court ‘ to twist the Plan into something it clearly is not ’. Whatever reliance the appellants may have placed upon their expectation of future pension rights, the terms of the plan clearly indicate that all interest in the pension fund ceases when the employment relationship is severed.”
Motion granted.