Foster, J.
This is an appeal by permission of the Appellate Division, Third Department, from a final judgment in an equity action in favor of the plaintiffs. The action was commenced for the adjudication of plaintiffs’ rights under a “ Salaried Employees’ Retirement and Profit Sharing Program of Consolidated Metal Products Corporation ” (hereafter called Plan). The name of the corporation was subsequently changed to CMP Industries, Inc. (hereafter called Company), one of the named defendants in the action. The other named defendant, The National Commercial Bank and Trust Company of Albany, was a designated trustee.
The Plan was established by the Company for eligible salaried employees on May 31, 1957. An eligible salaried employee was one who had completed three years of continuous service, or the date he attained the age of 30 years, whichever was later. It should be noted that this did not include those employees who worked for an hourly wage. Employees eligible on the effective date of the Plan became members as of that date, and other employees were to become members as they became eligible. The Plan, including retirement and profit sharing provisions, and trust agreements, is set forth in a lengthy document, evidently drawn with meticulous care. The money for the Plan was con *220 tributed solely by the Company, although some of it might otherwise have been distributed as bonuses. It should be noted that the Plan did not come into existence as a result of any bargaining agreement between employees and the Company and, although the salaried employees were told about it, they had nothing to do with its creation.
The Company operated two divisions, separately at least for accounting purposes, although some of the salaried employees performed duties with both divisions. One division, the Transportation Division, manufactured mechanical and electrical equipment; and the other, the Ticonium Division, manufactured dental and laboratory equipment, including dental alloys. On October 31,1958, the Company sold the Transportation Division to another concern known as the Midland-Boss Corporation. As a result of that sale the plaintiffs, and several others, lost their employment with the Company. The plaintiffs went with Midland-Boss,
In this action the trial court held that the sale of the Transportation Division effectively discontinued the operation of the Plan in that division, and plaintiffs were entitled to be paid their proportionate shares of the trust funds set up under the Plan. An interlocutory judgment to that effect was granted, which the Appellate Division unanimously affirmed, and thereafter final judgment was entered.
As may be seen from the foregoing the provisions of the Plan itself must be the criteria for a proper disposition of the controversy, and the pertinent provisions, as we view them, are as follows:
“ Part One
Administrative and General Provisions
# * «
Section 2. Membership
# # #
(3) An Employee’s membership in the Program shall terminate if he dies, or if his Continuous Service is broken other than by reason of retirement under the Program, except that he may retain an interest in the Profit Sharing Plan in accordance with the provisions thereof.
*221 ^ Vi Vf
Section 4. General Provisions
(1) The establishment of the Program or any Plan thereunder shall not be construed as conferring any legal rights upon any Employee for a continuation of employment, nor shall it interfere with the right of the Company to discharge any employee and to take any action with reference to any Employee without regard to the effect which such action might have upon such Employee under the Program or any Plan thereunder. * $ *
Part Two
Retirement Plan
& Section 7. Certain Rights and Limitations
(3) The Retirement Plan may be discontinued at any time by the Board of Directors. In the event of the discontinuance of the Retirement Plan, the Trustee shall hold the assets of the Plan for the sole and exclusive benefit of Members, retired Members and their beneficiaries, including the payment of taxes referred to in Subsection (2) above, and no part of such assets shall in any circumstances be paid to or for the use of the Company prior to the satisfaction of all liabilities under the Retirement Plan, provided, however, that such excess assets as may exist because of an erroneous actuarial computation shall be returned to the Company. Upon discontinuance of the Retirement Plan, the Committee shall determine on the basis of actuarial valuation the share of assets allocable to Members, retired Members and beneficiaries in the following order:
First, each retired Member or his designated beneficiary shall be entitled to a share equal to the actuarial reserve required to provide the remaining benefits to which he had become entitled under Section 3, Subsection (6) of the Retirement Plan. *222 Second, the remaining assets of the Trust shall be allocable to Members, retired Members and their beneficiaries on the basis and to the extent of the value of the actuarial reserves which have accrued to each of them for other benefits under the Betirement Plan, at the date of discontinuance of the Plan.
* # #
Part Three
Profit Sharing Plan
* # *
Section 3. Allocation of Company Contributions and Earnings or Losses of the Trust
(1) The Company’s contribution for each year shall be allocated in the following manner as of May 31 among Members who were such or who became such on that date, but not including Members who have retired or otherwise terminated their employment. Each Member shall be credited with an amount which is in the proportion to the total annual contribution of the Company for the benefit of Members who are Employees of the Division of the Company by which the Member is employed which his Compensation from that Division of the Company bears to the total of all Compensation of all Members from that Division of the Company as of that date.
(2) The fact that an allocation has been made as hereinbefore provided shall not operate to vest in a Member any right, title or interest in and to any assets of the Profit Sharing Plan Trust. Vesting of such interests shall be accomplished only at the times and on the contingencies hereinafter set forth in this Profit Sharing Plan.
* # *
Section 5. Termination of Employment Benefits
(1) When a Member ceases to be an Employee except at retirement or death, the interest and rights of such Member shall be limited to those contained in the following Subsections of this Section 5.
*223 (2) On such termination of employment, the Member shall be entitled to a percentage of the full amount standing to his account as of the last Valuation Date preceding his termination of employment, such account to be adjusted for gains or losses between the Valuation Date and the last business date preceding termination of employment, determined by the number of his completed years of membership in the Plan, as follows:
Number of Years Vested Equity
Less than 6 years 0% [emphasis supplied]
5 years but less than 6 years 25 %
6 years but less than 7 years 30%
* * *
Section 8. Certain Rights and Limitations
(1) It is the intention of the Company to continue the Plan and to make its contributions regularly as provided in Section 2; but the Company, by action of its Board of Directors, may discontinue the Profit Sharing Plan at any time. In the event of the discontinuance of the Profit Sharing Plan, the Trustee shall hold the assets of the Plan for the sole and exclusive benefit of Members and their beneficiaries and no part of such assets shall in any circumstances be paid to or for the use of the Company. Upon discontinuance of the Profit Sharing Plan, each Member, retired Member and beneficiary of a deceased Member shall be vested with all rights in and to the full value then standing to the credit of such Member’s account ”.
The effect of the section relating to Termination of Employment Benefits becomes immediately apparent. Plaintiffs had no vested equity in the amounts credited to their accounts because they had been members of the Plan for less than five years and there .is no proof in the record, and plaintiffs do not claim, that they had reached retirement age at the time their connection with the Company was severed. The only possible theory upon which they could recover would be that the Plan was discontinued while they were members. The Plan however was never *224 discontinued. To the contrary, the proof shows that the Plan was continued after the sale to Midland-Boss of the Transportation Division and the Company made further contributions; that there was a reallocation to the remaining members covered by the Plan of the amounts standing to the accounts of the plaintiffs following their termination of employment, as provided in the Plan. There is no provision in the Plan for a partial discontinuance, and yet the courts below have held that a partial discontinuance resulted from the sale of the Transportation Division so far as the plaintiffs are concerned. It seems to us that courts below have written into the Plan something that is not there.
The Plan was created voluntarily by the Company and all contributions to the funds were made by the Company. There were some references in the testimony that a portion of the funds would otherwise have been distributed as bonuses, and in that sense the members were contributors. However, bonuses were gratuities which might or might not be distributed at the pleasure of the Board of Directors of the Company. It cannot be gainsaid, we think, that the benefits conferred on the Members of the Plan were tantamount to gifts, and the Company had the right, as the donor, to fix the terms and limitations of the gifts. It is clear that the status of the plaintiffs must be determined by the language of the Plan itself.
The trial court and the Appellate Division relied chiefly on the case of Longhine v. Bilson (159 Misc. 111). So far as this case is concerned, it is a precedent of dubious value but in any event it can be distinguished factually. There, the action was brought by and on behalf of members of an Employees’ Benefit Association, an unincorporated association, for a dissolution of the association and a distribution of its assets among the individual members of the association. The association was organized by almost all the employees of three wallpaper companies, Pittsburgh, Niagara and Defiance, substantially controlled by the same group, to provide sick benefits for its members. Economic conditions altered circumstances and gradually the membership changed to the point where there were 423 members in 1935, of whom 126 were employed by Defiance and 197 by Niagara. At that time, Defiance notified its employees it was going out of business. The employees then sought a dissolution of the asso *225 elation. The court denied plaintiffs a decree dissolving the association but provided that the employees of Defiance had a right to their proportionate share of the available fund of the association. The court was of the opinion that the members of the association did not contemplate a mass discharge of employees when they adopted a by-law, providing, in substance, that membership ceased upon voluntary or involuntary non-employment by one of the companies and a resulting forfeiture of any benefits. The plaintiffs were members of the association and had contributed to the funds of the association. Hence the court, in effect, gave back to the plaintiffs their own money without effecting a dissolution of the association. The association there and the Plan here are not dissimilar in terms, except that plaintiffs herein have contributed no money to the funds under the Plan. Just as the court there held the association had not ceased because the one company was still in operation, so too in the present ease the Plan has not been discontinued because the Company is still in operation and eligible employees are accruing rights under the Plan.
There are two cases to the contrary: Schneider v. McKesson & Robbins (254 F. 2d 827) and Bailey v. Rockwell Spring & Axle Co. (13 Misc 2d 29), which the courts below have attempted to distinguish. The Schneider case dealt with a plan almost identical with the Plan in the present case, and the plaintiffs there relied on the Longhine case but the court refused to follow it. In the Bailey case the plaintiffs were denied the right to participate in retirement funds after their discharge from employment for the reason that the provisions of the plan precluded such participation. Similar decisions have been made in other jurisdictions (George v. Haber, 343 Mich. 218; Karcz v. Luther Mfg. Co., 338 Mass. 313, 321; see, also, 76 Harv. L. Rev. 952 [March, 1963]).
Moreover, it was plainly stated in the Plan that the establishment thereof should not be construed as conferring any legal rights upon any employee for a continuance of employment, or prevent his discharge, without regard to the effect such action might have upon such employee under the Plan. We are unable to perceive how the plaintiffs acquired any rights, vested or otherwise, under the situation that developed. There were never more than 15 salaried members of the Plan. At the time the *226 plaintiffs left the employment of the Company on October 31, 1958, one plaintiff had been a vice-president of the Company earning $11,500 per year; another plaintiff was doing cost estimating and pricing of sales service orders, and the third was an assembly foreman. The plaintiffs left the Company to go with Midland-Boss Corporation, an Ohio corporation, which had purchased the transportation business of the Company pursuant to an agreement made October 15, 1958. Four other employees of the Company who were members of the Plan also left the Company to go with Midland-Boss Corporation at the end of October, 1958. Eight members of the Plan continued in the employment of the Company and the Company continues to make its contributions under the Plan. All contributions to the funds were and are made by the Company with company checks and at no time did the Company, through its Board of Directors, discontinue the Plan. The Company was a single entity, except for accounting purposes, whereby certain costs were charged to each manufacturing division. It had a single Board of Directors and a single accounting department. All personnel were employees of the Company and were paid with Company checks. Concededly the Company continues in business and the Plan is still in existence. Since the Plan made no provision for a partial discontinuance, the plaintiffs are in no better position than they would have been if they had severed their connection with the Company for reasons other than the sale of the Transportation Division.
The judgment should be reversed and the complaint dismissed, without costs.