275 So.2d 117

James C. MARTIN, Jr.

v.

Mrs. W. S. KNIGHT a/k/a Sallie S. Knight.

SC 26.

Supreme Court of Alabama.

Feb. 15, 1973.

Rehearing Denied April 5, 1973.

Edward P. Turner, Jr., Chatom, for appellee.

Howell, Johnston, Langford & Finkbohner and John L. Lawler, Mobile, for appellant.

COLEMAN, Justice.

The respondent appeals from a decree for complainant in a proceeding for declaratory decree to determine the owner of a certain interest in the oil, gas, and miner-

als in, on, and under certain land in Choctaw County.

Determination of the issue presented requires consideration of two deeds. The first is a warranty deed, dated December 23, 1939, executed by J. C. Bolinger, Trustee, as grantor, to James C. Martin, the respondent, as grantee. The deed will be referred to as the Bolinger deed. By its terms, grantor conveys to grantee the lands described. Immediately following the description of the land conveyed, the deed recites:

> "The grantor herein except (sic) and reserves from this sale, the oil gas and mineral rights in and to said lands, with rights of ingress and egress thereon and all necessary rights for exploring, prospecting drilling mining and removing the oil, gas and minerals therefrom, and with the exclusive right to the grantor or his assigns to make and enter into such oil, gas and mineral leases as they may deem advisable, and for such bonuses and royalties as may be acceptable to them; however it being understood and agreed that the grantee, his heirs or assigns shall be entitled to receive the equal one-fourt (sic) ($\frac{1}{4}$) of all bonuses and royalties under any such contract, payment to be made direct to such party or deposited in such bank as may be designated by him."

The right to receive one-fourth of all bonuses and royalties, which passed to the grantee as set out in last quoted proviso in the deed beginning with the word "however," is the subject matter of this suit. The right thus acquired by the grantee will sometimes be referred to as a non-participating royalty. A discussion of the nature of such an interest may be found in Texas Law Review, Vol. XXVI, page 569, in an article by Lee Jones, Jr. We express no opinion as to the nature of such an interest.

Martin, the respondent, who is the grantee in the Bolinger deed, subsequently conveyed the same land to Knight, the complainant, by warranty deed dated December 27, 1939. The question is: Did the respondent, by executing the second deed, convey the non-participating royalty to complainant; or, did the respondent retain the non-participating royalty for himself?

The second deed recites that respondent and wife, for recited consideration, do grant, bargain, sell, and convey to complainant the described land. Immediately following the description of the land, the deed recites:

> "TO HAVE AND TO HOLD the same unto the said party of the second part, her heirs and assigns in fee simple.
>
> "It is agreed and understood that there is reserved from this conveyance, oil, gas and mineral rights, with the same provisions as contained in that certain conveyance from J. C. Bolinger Trustee to James C. Martin dated December 23, 1939, wherein the grantee in said conveyance, his heirs and assigns, would be entitled to received (sic) the equal one-fourth of all bonuses and royalties under any lease contract.
>
> "It is further agreed and understood that the grantor, James C. Martin, Jr., herein named, reserves the title to all timber eight inches and up twelve inches from the ground standing, lying and being upon said land, with all necessary rights of ingress and egress over and across said land for the purpose of cutting, manufacturing and removing said timber, and the right to go on and across said land with wagons, trucks, or any other appliances necessary for said purpose, and the right to construct and operate thereon a saw mill for the purpose of manufacturing said timber, for a period of two years from the date hereof, and it is agreed and understood that all the rights, privileges and easements herein reserved shall expire at the end of the said two year period."

The remainder of the deed sets out the covenants of warranty and the testimonium clause.

It is noted that the grantee named in the Bolinger deed is James C. Martin, and the grantor named in the second deed is James C. Martin, Jr. It appears without dispute that James C. Martin and James C. Martin, Jr., are one and the same person.

In support of his contention that he retained the non-participating royalty, respondent argues to the following effect. He says that there is no problem in construing the Bolinger deed and we are inclined to agree. Referring to the second deed, respondent says:

" . . . In this latter deed the first two lines of the paragraph in question state:

" 'It is further agreed and understood that there is reserved from this conveyance oil, gas and mineral rights . . .'

"Thus, to that point, there would be no doubt that all oil, gas and mineral rights were reserved to the grantor-Appellant. . . ."

The word "all" does not appear before the words, "oil, gas and mineral rights." If it had been the intention of the respondent to reserve "all" the oil, gas, and minerals, he could have inserted the word "all," but he did not do so. Instead, the respondent proceeded to describe the reservation by referring to the Bolinger deed.

Respondent says that the rule is that in deeds, where two clauses are inconsistent, the earlier prevails over the later clause. We are not inclined to apply that rule, but if we did, respondent could not prevail. Prior to the reservation provision in the second deed, the granting clause and the habendum clause recite that respondent conveys the land, without reservation or exception, to " . . . the said party of the second part, her heirs and assigns in fee simple."

■ Respondent appears to attach some importance to the fact that the word "reserved" is used instead of the word "excepted." There appears to be some technical difference between reservations and exceptions, and we do not disregard that difference but find no significance in that difference or distinction in the instant case. The Supreme Court of Mississippi has said and we agree that:

" . . . In drawing deeds, the words 'reserve' and 'except' are frequently used interchangeably when applied to minerals . . . " Merchants & Manufacturers Bank v. Dennis, 229 Miss. 447, 91 So.2d 254, 256.

The respondent contends for a construction of the second deed favorable to him. He was the grantor in said deed. A different construction favors the grantee.

It must be conceded that the grantor in the Bolinger deed did reserve and except all the oil, gas, and mineral rights in the land except the one-fourth non-participating royalty which was conveyed to respondent. Respondent did not own any interest in three-fourths of the oil, gas, and minerals in the land. In order to protect his warranty and in order to convey only what he did own, it was necessary for him to make some reservation or exception of oil, gas, and mineral rights. This he did. He did so by reciting in the second deed that " . . . there is reserved from this conveyance, oil, gas and mineral rights, with the *same* (Emphasis Supplied) provisions as contained in that certain conveyance from . . . Bolinger . . . wherein the grantee in said conveyance . . . would be entitled to receive*d* the equal one-fourth of all bonuses and royalties under any lease contract."

■ The second deed recites that the reservation provisions in the deed to complainant are " . . . the *same* provisions as contained in . . . " the Bolinger deed. Respondent does not stop there. He goes on to point out that part of the Bolinger provisions " . . .

wherein the grantee in said conveyance . . . would be entitled to received one-fourth of all bonuses and royalties . . ." By the provisions of the Bolinger deed, the grantee therein, the respondent, received the non-participating royalty. If the *"same* provisions" are to control in the second deed, then the grantee therein, the complainant, must receive the same non-participating royalty.

If respondent intended to retain the non-participating royalty for himself, he could have said so. As was said by the Court of Civil Appeals of Texas with respect to a mineral reservation:

> " . . . The wording of reservations and exceptions in conveyances is not difficult.
>
> · · · · · ·
>
> " . . .
>
> " . . . If their purpose had been to reserve a ⅛th of the minerals that they owned in the east 10 acres for themselves, we think they would have made such intent an express feature of the reservation provision. . . ."
> Klein v. Humble Oil & Refining Co., Tex.Civ.App., 67 S.W.2d 911, 916, 917.

In the paragraph of the second deed immediately following the paragraph dealing with the mineral reservation, respondent had no difficulty in clearly reserving to himself the title to and right to remove certain timber from the land for a period of two years.

The last construction of the second deed is favorable to the grantee therein; i. e., the complainant. The last construction favoring the grantee is at least as reasonable as the construction contended for by the grantor. This court has said:

> "[2] We think that the interpretation or construction placed on the so-called reservation clause by the grantees, the appellees here, is as plausible as the construction placed thereon by the appellant. In other words, we are clear to the con-

clusion that the words used in the so-called reservation clause are ambiguous and that the meaning of that clause is doubtful.

> "We must therefore construe the so-called reservation clause so as to resolve the doubts in favor of the grantees and against the grantor. May v. Bedsole, 245 Ala. 323, 16 So.2d 703; Milner Land Co. v. Houston, 225 Ala. 223, 142 So. 410; Martin v. Consolidated Cone Co., 216 Ala. 551, 114 So. 37; Webb v. Jones, 163 Ala. 637, 50 So. 887; Jacobs v. Roach, 161 Ala. 201, 49 So. 576; 16 Am.Jur. 615, Deeds, § 309; 26 C.J.S. Deeds § 140, p. 450." Crump v. Crump, 261 Ala. 504, 509, 74 So.2d 713.

■ Following the foregoing authorities, even if it be conceded that the reservation provision of the second deed is ambiguous, it follows that the deed must be construed in favor of the grantee and against the grantor.

■ Testimony was taken ore tenus before the trial court whose province it was to consider the same and determine the inferences to be drawn therefrom; and the findings of fact by the trial court will not be disturbed unless plainly and palpably wrong. Under this rule, the decree of the trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and MADDOX, FAULKNER and JONES, JJ., concur.

MERRILL, HARWOOD and BLOODWORTH, JJ., and LAWSON, Supernumerary Justice, dissent.

LAWSON, Supernumerary Justice (dissenting):

J. C. Bolinger died in 1953. In 1955 Franklin C. Evans was named to succeed Bolinger as trustee of certain oil, gas and mineral interests in several thousand acres

of land. The surface of that land, as well as the oil, gas and mineral interests, apparently at one time had belonged to Choctaw Lumber Company. The surface rights were sold, but interests in the oil, gas and minerals under the surface had been retained and at the time Evans was named trustee such interests were owned apparently by "the former stockholders of Choctaw Lumber Company."

In November, 1964, Evans, as trustee, executed an oil, gas and mineral lease which covered 480 acres of land, 120 of which was described in the deeds under consideration in this case. Roy J. Anderson was the lessee and he paid to Evans, as trustee, a bonus of $15 an acre, making a total payment of $4,800. After that payment was made, Evans, in accordance with the directions from the lessee, Anderson, transmitted to Mrs. Knight the sum of $450, which represented one-fourth of the bonus due by Anderson on the 120 acres of land. Martin was unaware of that transaction.

Anderson's rights under his lease terminated in November of 1965. On August 22, 1966, Evans, as trustee, executed a lease, apparently an oil, gas and mineral lease, to Placid Oil Company covering more than six thousand mineral acres. The bonus paid by Placid was $5 an acre. The Placid lease covered "possibly a hundred mineral acres" involved in this litigation. Evans instructed Placid's representative " . . . to pay me what I am entitled to and pay anybody else . . . . " Evans did not remit to anyone else any part of the bonus paid to him.

In early 1967 Placid undertook to pay the bonus due on that part of the oil, gas and mineral interests leased to it by Evans, as trustee, in 1966, which were covered by the deeds in question. Placid first issued a check or draft to Martin, the payment of which was conditioned on Mrs. Knight signing a release of any interest she might have in the bonus. Thereafter, Placid issued a check to Mrs. Knight, the payment

of which was conditioned on Martin executing a written release of any interest he might have in the bonus.

Neither Mrs. Knight nor Martin would execute the release, so the bonus was not paid by Placid.

As a result of the disagreement between Mrs. Knight and Martin, this litigation ensued. Mrs. Knight's bill of complaint was filed on June 9, 1967. Martin filed on July 18, 1967, a plea in abatement, which was overruled with his consent on January 19, 1968. Martin filed a general demurrer to the bill of complaint on August 16, 1968. The record does not reflect that the court ruled on the demurrer. Martin also filed on August 16, 1968, an answer which he prayed be taken as a cross bill. No answer was filed to the cross bill and the trial court made no ruling thereon. The cross bill is not involved on this appeal. The cause came on for an ore tenus hearing on October 1, 1968. The taking of testimony was not concluded on that date. A subsequent hearing was held wherein the testimony was taken ore tenus on July 14, 1969. Final decree was rendered on December 20, 1971. An appeal was taken to this court by the respondent, Martin, on February 10, 1972, and the cause was submitted here on October 17, 1972.

In substance the prayer of Mrs. Knight's bill was that the court decree that Martin "has no right, title, interest in or claim to the oil, gas or other minerals in, on or under" the subject lands, or "any right to receive the equal one-fourth of all bonuses and royalties under any lease," and that complainant, Mrs. Knight, "is the owner of and has the sole and exclusive right to receive the equal one-fourth of all bonuses and royalties under any lease . . ." affecting said 680 acres of land; that the court construe the deed from Martin to Mrs. Knight, dated December 27, 1939.

The trial court decreed substantially in accordance with the prayer of Mrs. Knight's bill, that is, (1) Martin did not reserve unto himself in the deed of Decem-

ber 27, 1939, any of the oil, gas and other minerals in or under the subject lands; (2) Martin is not entitled to receive the equal one-fourth of all bonuses and royalties which are to be paid under any lease; (3) all of the interest which Martin acquired from Bolinger under the deed of December 23, 1939, "passed to and is owned by the complainant . . ."; (4) Mrs. Knight, the complainant, is the owner of and has the right to receive an equal one-fourth of the bonuses and royalties under any lease made covering the oil, gas and other minerals in or under the subject lands.

The argued assignments of error challenge the correctness of the trial court's declarations as above indicated.

The contention made by appellee to the effect that the deed from Bolinger to Martin conveyed to Martin not only the fee simple title to the subject land, but the fee simple title to the oil, gas and minerals under that land and that the deed from Martin to Knight did likewise because the provisions which relate to the reservation of oil, gas and minerals in both deeds were in clauses which followed the granting clause, is without merit.

The last mentioned contention is in conflict with the holding of this court in Holmes v. Compton, 273 Ala. 554, 142 So. 2d 697, followed in Hays v. Hagen, 274 Ala. 128, 145 So.2d 818. In the deed involved in the *Holmes case, supra,* the reservation of oil and minerals was contained in a clause which followed the granting clause. In *Holmes* it is said in part as follows:

"  .  .  . Considering the entire deed we believe that a clear intention appears in the deed for the grantor to reserve certain mineral rights in the property. This is true although the granting clause contains words of inheritance. Accordingly there is no necessity to invoke any arbitrary rules of construction.

We believe that this intention becomes more apparent when we consider that the reservation excepts oil and mineral interests. There is a clear difference between a grant of surface rights and a grant of mineral rights. 'Minerals, coals and ores excepted from a grant remain in the grantor as before the grant. They are distinct and separate properties which may be conveyed separately from the surface.' Thompson on Real Property, Volume 6, Section 3462, page 692. This court has expressly given effect to a reservation excepting oil or mineral interests. McCall v. Nettles, 251 Ala. 349, 37 So.2d 635.

We do not think that a general rule should be stated which must govern all cases, but that each case should be considered on its merits. In considering mineral rights as separate and apart from surface rights we see no repugnancy between the causes [sic] in the deed now before us and so we will not resort to arbitrary rules of construction. Slaughter v. Hall, 201 Ala. 212, 77 So. 738; Sanford v. Alabama Power Co., 256 Ala. 280, 54 So.2d 562; McCall v. Nettles, supra."

For cases in addition to McCall v. Nettles, *supra,* which give effect to reservations excepting oil, gas or mineral interests, see Alabama Fuel & Iron Co. v. Broadhead, 210 Ala. 545, 98 So. 789; Buckelew v. Yawkey, 247 Ala. 304, 24 So. 2d 133; Crump v. Crump, 261 Ala. 504, 74 So.2d 713.

I am of the opinion that when the two deeds are considered together, a clear intention appears that the grantors therein did not intend to convey a fee simple title to the oil, gas and mineral rights beneath the surface of the lands described in the deeds.

The ultimate question in this case is, What did the grantor, Martin, mean in his deed to Knight under date of December 27, 1939, by the use of the following language:

"It is agreed and understood that there is reserved from this conveyance, the oil,

gas and mineral rights with the same provisions as contained in that certain conveyance, from J. C. Bolinger, trustee, to James C. Martin, dated December 23, 1939, wherein the grantee in said conveyance, his heirs and assigns, would be entitled to receive the equal one-fourth of all bonuses and royalties under any lease contract."

Mrs. Knight's interest could be no greater than the interest which Martin derived from the Bolinger-to-Martin deed under date of December 23, 1939; hence, I think it not inappropriate to express my views as to the scope of that conveyance.

Martin obtained a fee simple title to the surface rights of the subject property from Bolinger. He did not, in my opinion, obtain fee simple title to the oil, gas and minerals beneath the surface. Bolinger retained the fee simple title to the oil, gas and minerals in place and the exclusive leasing privilege. Martin got nothing more than the right to receive from the lessee of the mineral estate "one-fourth (¼) of all bonuses and royalties."

In Summers, Oil and Gas, Volume 3 A, § 571, it is said:

"The cash bonus, which represents market value of a lease apart from royalties to be paid on production and the other considerations of the lease, is a sum of money paid on the execution of the lease, or agreed to be paid at some later date, usually out of the lessee's share of the first oil produced from the land."

Also, see Summers, Oil and Gas, Volume 3 A, § 586; Manual of Oil and Gas Terms, Williams and Myers, p. 33.

The nature of an oil and gas lessor's royalty interest has been defined by different courts in various ways. I deem it unnecessary to say more than that the word "royalty" as used in the deeds under consideration here has reference to the mineral owner's share of production. See Summers, Oil and Gas, Volume 3 A, Chapter 20; Manual of Oil and Gas Terms, Williams and Myers, p. 342.

The language last quoted above from the 1939 deed from Martin to Knight, which I will refer to as the reservation clause, must be construed so as to resolve doubts in favor of the grantee and against the grantor. Crump v. Crump, supra.

Even when so considered, I am constrained to the conclusion that the only reasonable construction of that clause is that it reserves for the grantor, Martin, the rights in the oil, gas and minerals which he received in the deed from Bolinger to him; that is, Martin reserved the right to receive from any lessee of the oil, gas and minerals under the subject lands "one-fourth (¼) of all bonuses and royalties."

The language of the reservation clause in the Martin-to-Knight deed is not identical to the so-called reservation clause in the Bolinger-to-Martin deed; consequently, I do not entertain the view that the reservation clause in the Martin-to-Knight deed was designed only for the purpose of describing the interest owned by Martin and to protect his warranty. In this respect the case of instant concern is distinguishable on a pivotal point from the case of Salmen Brick & Lumber Co. v. Williams, 210 Miss. 560, 50 So.2d 130, upon which the trial court placed considerable reliance in the rendition of its decree. Likewise, I think the other cases cited by the trial court are distinguishable in the same respect and in other respects from the facts of the instant case. See Garraway v. Bryant, 224 Miss. 459, 80 So.2d 59; Merchants & Manufacturers Bank v. Dennis, 229 Miss. 447, 91 So.2d 254; Brannon v. Varnado, 234 Miss. 466, 106 So.2d 386; Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878.

I entertain the view that, Mrs. Knight, did not receive any interest in the oil, gas and minerals in the subject lands by virtue of the deed to her from Martin under date of December 27, 1939, and, conse-

quently, would reverse the decree of the trial court and remand the cause for further proceedings.

MERRILL, HARWOOD and BLOODWORTH, JJ., concur.