290 So.2d 173

**AVONDALE MILLS, a corp., et al.**

**v.**

**Jerry M. SADDLER, Individually and on behalf of others similarly situated, et al.**

**SC 413.**

Supreme Court of Alabama.

Feb. 7, 1974.

Rehearing Denied March 7, 1974.

Wm. Bew White, Jr., and Warren B. Lightfoot, Birmingham, for appellants.

Cooper, Mitch & Crawford, Birmingham, for appellees.

FAULKNER, Justice.

This is an appeal from a class action decree in equity in favor of appellees.

The trial judge determined that Avondale could not equitably forfeit and deny deferred earnings of 283 employees of its Birmingham plant held in a retirement trust when Avondale closed the Birmingham plant because of economic conditions in the autumn of 1971.

Avondale had created a retirement trust for its employees in July, 1945. The trust was in force at the time of the plant's closing.

The trust provides that all contributions made to the trust are made by Avondale. The members of the trust acquire vested rights to the respective accounts as follows: 50% after ten years service as a trust member, and an additional 5% each year thereafter until full vesting at the end of 20 years service. The trust provides for forfeitures—whole or partial—depending on the year of employment when a trust member is terminated. All forfeitures revert to the trust and are allocated to the remaining accounts in the trust.

The trust further provides that the trust is not terminated until (1) Avondale's Board of Directors passes a resolution to the effect that no more contributions will be made; (2) the trust is amended to that effect; and (3) the trustees have acquiesced in its termination. None of these conditions had occurred when the employees, who sustained forfeitures when the Birmingham plant was closed, filed their suit. Briefly stated, the suit sought a declaration that the trust had been terminated as to them when they lost their jobs with the plant's closing; that all forfeitures should be set aside; that they are entitled to the amounts in their respective trust accounts as of the date the plant was closed.

From the record it appears that the Birmingham plant was closed for economic reasons. There does not appear to be any bad faith on the part of Avondale. All of the Birmingham plant employees, consisting of 444 in number, were offered jobs by Avondale at other locations. One hundred forty-nine of those employees accepted the offer and were relocated after the closing. A portion of those employees who rejected the offer to transfer had vested rights in the trust. They will receive those trust rights upon entering retirement age or disability, as provided by the trust. Those without vested rights, of course, sustained forfeitures. In addition to Birmingham, Avondale had other locations for its business, and throughout its industry there were over 5,000 members of the trust.

The sole substantial issue before this court is the correctness of the trial court's decree.

While a number of appellate courts have ruled on forfeitures and rights of trust members under pension and retirement plans resulting from plant closings, it appears that this is a case of first impression in this court.

The United States Court of Appeals for the Sixth Circuit in Schneider v. The Electric Auto-Lite Co., 456 F.2d 366 (6 Cir. 1972) denied employees pension rights who had not achieved the requisite period of 10

years service and age 40 years when the plant closed. In a class action brought by former employees of a division of a corporation to determine their rights under the corporation's profit-sharing plan and trust, the First Circuit in Dierks v. Thompson, 414 F.2d 453 (1 Cir. 1969) held that the sale of the assets of the division terminated the employees' employment but did not terminate the plan. The trust in that case provided that upon termination of employment the trust accounts would be frozen and paid out upon death, disability, or age 65. In Schneider v. McKesson & Robbins, 254 F.2d 827 (2 Cir. 1958) a class action was brought by discharged employees resulting from a plant shutdown to establish the extent of their interest in a profit-sharing plan whereby contributions were entirely made by the employer. The court held that the employee had no interest in the funds. There the qualified participants were entitled to retire at age 65, or age 60 by a special vote of the board of directors, with annual interest allowance computed in accordance with terms of the plan, but if a participant ceased to be an employee for any reason, his participation therein terminated. The profit-sharing plan was declared not to have been terminated or partially terminated by the closing of the plant. A trust very similar to Avondale's was involved in Rankin v. Kellam, 388 S. W.2d 306 (1965), a case of the Texas Court of Civil Appeals. When the corporation sold an operation employing 99 employees, it offered employment to the employees at another location. Those who did not accept had their employment terminated. There the plan was contributed to solely by the employer and forfeitures reverted to the trust. No benefits of forfeitures were received by the employer. See also Fernekes v. CMP Industries, Inc., 13 N.Y.2d 217, 246 N.Y.S.2d 201, 195 N.E.2d 884 (1963); George v. Haber, 343 Mich. 218, 72 N.W.2d 121 (1955); Wallace v. Northern Ohio Traction and Light Co., 57 Ohio App. 203, 13 N.E.2d 139 (1937).

The appellees here contend that the rights under the trust are similar to rights to vacation pay, bonus, and severance pay and cite Lucas v. Seagrave, D.C., 277 F. Supp. 338 (1967); American Security Life Ins. Co. v. Moore, 37 Ala.App. 552, 72 So. 2d 132 (1954); Woodward Iron Co. v. Ramey, 42 Ala.App. 637, 175 So.2d 748, cert. denied 278 Ala. 713, 175 So.2d 749 (1965); and Livestock Feeds v. Local Union No. 1634, 221 Misc. 492, 73 So.2d 128 (1954).

We cannot agree. Vacation pay, bonus payments, and severance pay generally result from contractual relations between employee and employer, or under collective bargaining agreements. And, in the event of forfeitures, the employer benefits. Here the relationship is one between trust and beneficiary who must meet the requirements of age and years of service to have a vested interest. Also, all forfeitures revert to the trust and inure to the benefit of the remaining members.

It is our conclusion that the integrity of the trust indenture as written must be upheld. We cannot and should not rewrite it. First National Bank of Birmingham v. Adams, 281 Ala. 404, 203 So.2d 124 (1967). The rights of the beneficiaries of the trust must be determined by the trust provisions. See Bailey v. Rockwell Spring and Axle Co., 13 Misc.2d 29, 175 N.Y.S.2d 104 (1958); Green v. Copco Steel, 22 Mich. App. 16, 176 N.W.2d 690 (1970). The trust indenture clearly states the requirements which an employee must meet in order to qualify for retirement benefits. The plant's closing did not wholly or partially terminate the plan. Those appellees who have vested rights must fulfill the requirements of the trust before receiving their benefits. Those who have not met the eligibility requirements under the plan have no claim.

We pretermit discussion of the other assignments of error.

Reversed and remanded.

MERRILL, HARWOOD, BLOOD-WORTH, MADDOX and McCALL, JJ., concur.

HEFLIN, C. J., and JONES, J., dissent.

HEFLIN, Chief Justice (dissenting):

I respectfully dissent for the reasons set out hereinafter.

Pertinent portions of the trial court's finding of facts and final decree are set out immediately hereinafter.

"This is a class action presenting a justiciable controversy, properly brought in equity.

The named complainants were employed, for varying periods of time, by Avondale Mills at its Birmingham, Alabama Plant. Their employment ended on or about September 15, 1971, when the company ordered the Plant permanently closed. Each complainant was ready, willing and able to continue his or her employment beyond that date, and had expected to do so. Each complainant has suffered a form of forfeiture or denial of expected retirement benefits as a result, entirely without his or her fault, of the respondent company's closing of the Plant.

The named complainants are fairly representative of the entire class of people who worked at this Plant and who have suffered similar forfeitures or denial of expected retirement benefits. Accordingly, the term 'complainants' as used in this Decree includes all members of the described class. The class does not include any individual presently employed at any other Avondale Mills Plant, or any individual whose employment was not ended by the closing of the Birmingham Plant.

Respondent company established, and respondent individual trustees and respondent bank have administered and are now administering, a Retirement Trust participated in by employees of this Plant. Since the establishment of the Trust, each employee has annually been paid by the company only one-half of that part of his earned compensation or wages known as profit-sharing. The other one-half of that portion of each employee's earned compensation or wages has been annually put in the Trust as deferred earnings to be paid to each employee as he or she reached the retirement age and years of service. Because complainants had not, when they were deprived of further employment at this Plant, reached the full specified years of employment and age set forth in the Trust, respondents have declared portions or all of complainants' deferred earnings forfeited or not currently payable.

As each complainant was originally employed at the Plant, he became a member or participant in the Retirement Trust. In return for expected and promised retirement benefits, each employee gave up a portion of his compensation as earned. That deferred portion of earnings was—as he expected and as respondents led him to believe—to be paid to him upon retirement. He was never, prior to September 1971, told that he would be denied an opportunity to work at this Plant for the number of years contemplated by the Trust, or would suffer a loss or forfeiture of his deferred wages if the company decided to close the Plant, through no fault of complainants.

During their employment complainants were repeatedly informed, particularly through official publications of Avondale Mills, that as 'a staff to lean on in our old age', the wages which they had earned and which were being held in trust would be available for retirement.

There is no provision in the Trust dealing with closing of an entire plant, or with en masse severance of an entire plant's work force as occurred here. More particularly there is no provision in the Trust for such a mass deprivation of further employment in no way attributable to fault of the employee-members of the Trust. The reasonable expectations of complainants,

inherent in their contract of employment and upon which respondents (particularly respondent company) led them to rely, have been frustrated. Respondents led complainants to expect that they would be permitted to continue their employment at this Plant, both in order to accumulate years of service and to earn wages until they reached the age of retirement.

·From the inception of the Trust and down to the actual date of closing of the Plant in September of 1971, the company evidenced no intent to close the Plant and did not inform complainants in any way that the closing of the Plant and the mass ending of their employment would or might occur or would or might lead to mass forfeiture of complainants' withheld earnings and mass frustration of complainants' expected retirement benefits. Avondale Mills spent a substantial amount of capital funds in this Plant in the months immediately prior to September 1971. In the various documents and statements issued about the Trust prior to September 1971, Avondale Mills, the settlor of the Trust, did not at any time communicate a possibility that such a contingency might occur. The Court is convinced (and so finds) that all parties expectantly looked forward to the use of these deferred wages as a support in old age.

Over the years, the settlor has construed the Trust instrument as providing for forfeitures only when individual employees leave or are discharged for cause.

\*       \*       \*       \*       \*       \*

'Compensation' as commonly understood, includes the salary or wage or earnings that an employee reasonably may expect to receive. This includes so-called fringe benefits such as paid vacation, termination pay, health and welfare benefits, and more importantly, retirement benefits constituted out of portions of an employee's earnings held in reserve for his later years in retirement.

Contributions by an employer, as here, to a Retirement Trust are part of wages earned and withheld for later payments and may be analogized to prorata rights of employees to vacation and severance pay, for which they have not been permitted to qualify completely by the closing of their place of employment without fault of the employees. Lucas v. Seagrave, D.C., 277 F.Supp. 338.

The equitable principles upon which *Lucas* proceeds have had recognition in Alabama.

American Security Life Ins. Co. v. Moore, 37 Ala.App. 552, 72 So.2d 132, awarded a proportionate share of a promised bonus to an employee who suffered termination of his employment when the employer ceased doing business prior to the bonus eligibility date.

Woodward v. Ramey, 278 Ala. 713, 175 So.2d 749, adopted the modern view that prorata vacation pay is due an employee by the employer to the date of termination of the employee's services brought about because of the employer's permanently closing the plant involved.

*Ramey* cited and relied upon an illuminative Mississippi decision, Livestock Feeds v. Local Union No. 1634, 221 Miss. 492, 73 So.2d 123, and *Livestock*, in turn, cited Haag v. Rogers, 9 Ga.App. 650, 72 S.E. 46, 48, dealing with an employee's right to 'certain extra compensation.'

*Livestock Feeds,* a suit in equity (unlike the action at law in *Schneider* [Schneider v. The Electric Auto-Lite Co., 456 F.2d 366 (6th Cir. 1972)]) in which equitable principles were applied, refused to enforce a condition precedent of continuous employment, which could not have been performed because the employer undertook to go out of business, and awarded recovery of vacation pay 'in justice and right.' "

Based on its finding of facts and applying equitable principles extant in this state, the trial court ordered the respondent to set aside the terminated employee's forfeitures and make immediate payments.

It would appear that the facts as found by the trial court, though disputed in several instances, are supported by the evidence in the record and thus should not be disturbed unless plainly and palpably wrong. Martin v. Knight, 290 Ala. 171, 275 So.2d 117 (1973).

Based on the trial court's finding of facts, it would seem that the trial court was correct in following the example of Lucas v. Seagrave Corp., 277 F.Supp. 338 (1967); Woodward Iron Co. v. Ramey, 42 Ala.App. 637, 175 So.2d 748, cert. denied, 278 Ala. 713, 175 So.2d 749 (1965) and American Security Life Ins. Co. v. Moore, 37 Ala.App. 552, 72 So.2d 132 (1954). The majority would distinguish these cases on the basis that "[v]acation pay, bonus payments, and severance pay generally result from contractual relations between employee and employer, or under collective bargaining agreements." I would hold, as did the trial court, that fringe benefits such as a retirement plan are just as much a part of a worker's over all inducement or compensation as the wages he is paid each week, regardless of the mode of payment the employer chooses to utilize, particularly where one-half of that part of his earned compensation or wages known as profit-sharing is paid into the retirement trust. Thus, where, as here, the workers through no fault of their own, are prevented from receiving the benefit of compensation they have earned, equitable relief is appropriate.

As a final comment, I would point out that this court has recognized the doctrine of "equitable deviation" as applicable to both private and charitable trusts. In Thurlow v. Berry, 249 Ala. 597, 32 So.2d 526 (1947) the court stated:

"It is also familiar law that 'The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust.' Restatement, Law of Trusts, Vol. 1, § 167; Restatement, Law of Trusts, Vol. II, p. 381; Lovelace v. Marion Institute et al., 215 Ala. 271, 110 So. 381; 54 Am.Jur. p. 224 § 284; Scott on Trusts, Vol. 3, p. 2044, § 381.

"This doctrine of equitable deviation applies to private as well as to charitable trusts. Authorities supra."

While it is realized that this doctrine may not extend to the facts in this case, it is certainly analogous, and it demonstrates that when the situation demands rather drastic action on the part of a court of equity, the power to so act does reside in the chancellor.

I would affirm the lower court's action.

JONES, J., joins in the foregoing dissent.