Paul J. Widlitz, J.
This is a declaratory judgment action in which the plaintiffs seek determinations of their rights under a company pension plan. The parties have agreed on a statement of facts and have submitted the controversy for determination (CPLR 3222). The agreed facts establish each plaintiff as a member of the Long Island Railroad plan for supplemental pension (hereinafter called supplemental plan) as of July 1, 1971. Each plaintiff had made contributions pursuant to that plan, and each plaintiff under the terms of the plan had a vested right to a pension. The Long Island Railroad (hereinafter called LIRR) was superseded by the defendant, Metropolitan Transportation Authority (hereinafter called MTA), and thereafter, on June 27, 1970, the MTA and 19 separate collective bargaining unions entered into and negotiated a new pension plan called the Long Island Railroad Company pension plan (hereinafter called new plan). Under this plan, employees made no contributions, and all employees of the railroad were entitled to become members. Thus the supplemental plan, which had 2,000 employees in it, was superseded by the new plan with some 7,000 employees eligible to participate.
Those members whose pension rights had not vested under the supplemental plan received, without option, their gross contributions plus 6% interest or 106% of the total amount contributed. Those employees whose rights had vested under the supplemental plan were given the option of reimbursement of the amount of their contributions plus 6% interest and transfer to the new plan or they could remain eligible for pensions under the terms of the supplemental plan and continue making the required contributions until they reached retirement age. The amount of each respective pension still continued dependent upon earnings, age, and years of service.
The funds required to meet the obligations of the pensions were forthcoming by way of a contribution by each member together with the company’s contributions which were determined by article XI of the supplemental plan which reads as follows:
"The Company shall contribute such amounts as may be *101 determined by the Managers to be actuarially necessary, together with member contributions, to meet the current costs of the plan.
"Money representing the accrued liability * * * shall be provided by the Company by paying to the trustee, from time to time, such amounts as may be determined by the Managers to be actuarially necessary to provide pensions on account of such prior service.
"To the extent member and Company contributions for current costs of the plan do not satisfy the accrued liability as determined by the Managers for service of members subsequent to the entrance of such members into the plan, money representing such liability shall be contributed by the Company.”
The managers of the supplemental plan were given much latitude in keeping the plan actuarially sound, and article XIII provided as follows: "The Company reserves the right to modify, amend, or restrict the plan, or to discontinue it altogether * * * and for the purpose of keeping the plan in an actuarially sound condition at all times, the exercise of such right shall include any increase or decrease as may be made by the Managers of the amounts of contributions to be paid by the employees * * * provided that the exercise of such right shall not adversely affect * * * the then actuarial value of accruing pensions, the amount of such actuarial value to be determined as of the time of such change.”
The new plan further provided for a transfer of all remaining funds in the supplemental pension fund, after all options are exercised, to the new plan to be administered by the designated trustees for the benefit of all members, new and old, vested and unvested. Although each member had a choice in determining what avenue he would take, it was provided that no employee should be entitled to participate in more than one plan at any one time.
In instituting this action, the plaintiffs claim that their rights are substantially interfered with in two ways. Firstly, they claim that the amount of money to be returned by their withdrawal from the supplemental plan is not a proper sum. They contend that they are entitled to the actuarial value. This sum, they assert, would be the amount of each employee’s contribution plus the amount that the company was required to contribute as determined by the managers to be actuarially necessary to meet the costs of the plan. Secondly, *102 they contend that the determination to transfer any balance over and above the refundable 106% into the new plan is substantially benefiting other employees who were not involved in the supplemental plan and thus works to a deprivation of the rights of these plaintiffs.
In determining the pension rights as provided for in the pension plan, the guide for the court is the reasonable expectation and purpose of the ordinary businessman when making an ordinary contract (World Exch. Bank v Commercial Cas. Ins. Co., 255 NY 1, 5; Gitelson v DuPont, 17 NY2d 46, 51). The employer’s obligations and the employee’s rights under the supplemental plan are strictly delineated by the provisions contained therein. Where the provisions are clear and unambiguous, they must be strictly construed and the court may not rewrite the plan (Fernekes v CMP Inds., 13 NY2d 217, 224).
Until an employee qualifies for a pension, he acquires no contractual right in the fund beyond those sums actually contributed by him plus such interest that the managers of the fund might fix (Gould v United Traction Co., 282 App Div 812). It is not until retirement age is reached that an inchoate right ripens into a pension right in such amount as shall be determined by the age, wage, and years of service of the member (Silfen v United Whelan Corp., 30 AD2d 523).
With respect to Alt and Foran, who have retired, their vested rights under the supplemental plan at no time could exceed the amount of any pension they might be entitled to when their active employment ripened into retirement. The new plan in no way altered the monetary value of their vested interests. Building upon and enlarging a pension plan for the benefit of others in itself cannot be an argument for enlarging one’s contractual rights as spelled out in the original pension plan. As to Montgomery, who has not retired to date, of necessity his pension reserve must remain actuarially sound so, should he elect to remain in the supplemental plan, there must be maintained a fund in such amount as will actuarially produce the amount of pension he will be entitled to at the time of retirement. At this point, again, he cannot conceivably argue that his contractual rights should be enlarged just because others may benefit from an enlargement of the plan. Therefore:
1. Plaintiffs have a vested right to a pension under the supplemental plan and that right may not be abrogated by the *103 LIRE or MTA. When any one of the plaintiffs attains the age of retirement, as fixed in the supplemental plan, he becomes entitled to the sum fixed in the supplemental plan as his pension, determined by his earnings, age, and years of service.
2. Defendants LIRR and MTA have a right to modify the supplemental plan so long as the modification is reasonable and does not interfere with plaintiffs’ inchoate right to a pension upon reaching the age fixed in the supplemental plan.
3. If plaintiffs wish to become eligible under the noncontributory new plan, they must opt to withdraw from the supplemental plan and take a return of 106% of their contribution. There is no showing that the fixing of the sum of 106% of contributions, to be returned by the managers, is arbitrary.
4. Plaintiffs are not entitled to remain members of the supplemental plan and also become members of the new plan.