OPINION OF THE COURT
Jones, J.
A judgment creditor-wife is not entitled in a proceeding under CPLR 5225 (subd [b]) to which her judgment debtor-former husband is not a party to reach his inchoate rights under a noncontributory retirement plan established by the husband’s employer where the husband’s entitlement to payments thereunder is dependent on his making an election among alternative benefits and then applying for payment thereof.[1]
Betty Jean Sochor obtained a default judgment against her former husband, Joseph Sochor, for support arrears in the amount of $15,858.48. She seeks in this special proceeding against International Business Machines Corp. pursuant to CPLR 5225 (subd [b]) (in which her former husband has not been joined) to enforce collection of that judgment.
IBM has established a Retirement Plan (Plan) for the benefit of the corporation’s current and former employees. The Plan, supported only by contributions of the employer, is administered by trustees designated in the Plan.
Joseph Sochor, whose date of birth was November 17, 1923, was employed by IBM from June 15,1942 to November 30, 1971, when he voluntarily left its employ. Under the terms of the Plan, Sochor will be eligible to receive benefits if he livés to age 65 and makes the required application for benefits to IBM’s payroll benefits department. In the alternative, as a former employee who has completed 15 years of continuous service and has reached age 55, he is now eligible to receive reduced monthly benefits if he so elects and makes the required application. Such an early election additionally will require a choice among more than a dozen separate payment options, which *258 choice will irrevocably affect the amount of benefits available to the recipient. The amount of the benefits may also vary depending on whether he is single or married on the date payment of benefits commences.[2] No part of the assets held by the trustees under the Plan is designated or apportioned for the benefit of any current or former employee unless and until benefits become payable to him. The Plan also provides that benefits are not “subject to alienation, sale, transfer, assignment, pledge, attachment, garnishment, lien, levy or like encumbrance”, or subject to the “debts or liabilities of any person entitled to benefits under the Plan”.
It is undisputed that Joseph Sochor has made no election of benefits under the Plan, has filed no application for benefits, and has not reached age 65.
At the threshold we observe that the only entity made a party to this proceeding by the wife is IBM, the corporate employer. Inasmuch as all the assets of the Plan are held by its trustees (who comprise a separate legal entity) rather than by the corporation, there is serious question whether in the event of a determination on the merits favorable to her in this proceeding, the wife could enforce such determination against the corporation (CPLR 5201, subd [c], par 2). It is not necessary to resolve this issue, however, inasmuch as we conclude that the wife must fail on the merits.
The gravamen of her claim is that, within the contemplation of CPLR 5225 (subd [b]),[3] the corporation is “in *259 possession or custody of money or other personal property in which the judgment debtor has an interest”* **[4] which is reachable by virtue of the provision of CPLR 5201 (subd [b]).[5] The resolution of this claim turns on the nature of the husband’s interests under the Retirement Plan, which must be determined by reference to the terms of the Plan itself. Legal analysis in this instance is not advanced by resort to the “vesting” terminology of pension plan law.
No provision is made for the allocation of any portion of the assets of the Plan to or for the account of any employee. The rights of the employees are only to receive payments from the assets of the Plan generally in specified amounts on meeting the requirements set forth in the Plan. These requirements may be classified under two headings, eligibility and right to receive payments. The husband here has met the eligibility requirements, that is, he completed more than 15 years of continuous service before he left IBM’s employ in 1971 and he has now reached age 55. Accordingly, he is eligible to elect to take early retirement reduced benefits and then to make application for payment thereof. His right to receive payment of benefits under the Plan, however, depends both on his making an election to receive early retirement reduced benefits (and, if so, to choose among the several optional modes of payment of such benefits) and on his filing an application therefor as specified by the terms of the Plan. If he makes no such election and application before he reaches age 65 in November, 1988, he will become eligible at that time for normal retirement benefits, but again he will be entitled to receive such benefits only if he makes application therefor in the manner specified in the Plan. If the husband were to *260 step up in person now, without election and application, he would be entitled to no payment from the trustees of the Plan. Indeed, it appears that if the husband dies without having made application for benefits, neither he nor his estate will receive any benefits.[6] Accordingly, under the provisions of the IBM Retirement Plan Joseph Sochor has no proprietary interest which can be reached by his former wife under CPLR 5225 (subd [b]) unless and until he makes an election and application to receive retirement benefits.[7]
In this proceeding, to which the husband is not a party, the courts have no authority to compel him to make an election or to file an application for early retirement benefits, or, in the alternative, to make such election or to file such application on his behalf. The Plan provides expressly for the exercise of election rights by a “former employee” or a “participant” only. The rights granted to a former employee are personal to him and may neither be exercised nor forfeited in any proceeding to which the affected employee is not a party. Even if the making of the application required by the terms of the Plan were to be characterized as ministerial, the election between benefits at age 65 and reduced benefits at age 55 (together with the choice among multiple options in the latter case) involves decisions of substance beyond the power of the court to make in this proceeding.[8]
The cases on which the Appellate Division relied do not support the conclusion reached by it. For example, in Alt v Long Is. R. R. Co., (81 Misc 2d 99, affd 54 AD2d 724) the court, in declaring the rights of employees under a substi *261 tuted pension plan, merely held that “[i]t is not until retirement age is reached that an inchoate right ripens into a pension right” (81 Misc 2d, p 102). The California cases cited determined the rights of spouses to share in retirement benefits in accordance with the principles of law applicable in a community property State and then as they became payable. They are not authority for according the wife the right, in a noncommunity property State, to exercise her husband’s prerogative to elect and choose benefits and to make application for their payment.
In Kunzeck v Kunzeck (102 Misc 2d 607) in a proceeding to which the husband was a party it was held that, although in consequence of his 10 years of employment and his having reached age 60 the employee husband was entitled to elect early retirement, no rights to payment of benefits under a noncontributory plan accrued to either husband or wife until he elected early retirement, reached age 65 (normal retirement), or died.
For the reasons stated, the order of the Appellate Division should be reversed, with costs, and the order of Supreme Court reinstated.[9]
Chief Judge Cooke and Judges Jasen, Meyer, Simons and Kaye concur; Judge Wachtler taking no part.
Order reversed, with costs, and order of Supreme Court, Dutchess County, reinstated.

. We have no occasion to consider what remedies, if any, the wife might have if her former husband were a party to this proceeding.

. The underlying default judgment was based on substituted service on the husband fashioned under CPLR 308 (subd 5) because he had kept his whereabouts hidden from the wife and she could not with due diligence ascertain the location of his residence. It does not appear from the record whether Joseph Sochor is still alive, or, if so, whether he has remarried. Notice of the present special proceeding was given the husband by certified mail, return receipt requested addressed to his daughter, Mrs. Sharon Ifill, pursuant to the directions in an order to show cause (cf. CPLR 5225, subd [b]).

. CPLR 5225 (subd [b]) provides: “Property not in the possession of judgment debtor. Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor’s rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff. Costs of the proceeding shall not be awarded against a *259 person who did not dispute the judgment debtor’s interest or right to possession. Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested. The court may permit the judgment debtor to intervene in the proceeding. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 5239.”

. No claim is advanced under the transferee provision of subdivision (b), nor could it be inasmuch as IBM’s Retirement Plan is a noncontributory plan to which the husband never made a contribution.

. CPLR 5201 (subd [b]) provides in pertinent part: “Property against which a money judgment may be enforced. A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment.”

. The detailed specifications set forth in the Plan as to the necessity for and the manner of making formal application for retirement benefits create significant procedural protections for the trustees of the Plan, i.e., to eliminate, so far as practicable, factual issues as to whether an effective election has been made to receive early retirement benefits (and thus to forego the greater normal retirement benefits) — and if so which choice has been made among available optional modes of payment — or, in the case of normal retirement benefits, as to the entitlement of the employee to benefits and the manner of their payment. Explicit provisions with respect to the determination and the payment of retirement benefits may be of great practical significance to the administrators of the Plan.

. For similar reasons there is no merit to the contention now advanced by the wife, but not raised by her at Special Term, that the husband’s interest is reachable as a “debt” under CPLR 5227 and 5201 (subd [a]).

. The trustees of the Plan could be legitimately concerned as to their potential liability should the husband subsequently appear and make application for full retirement benefits after reaching age 65.

. In view of the ground on which we reverse the order of the Appellate Division we have no occasion to address the contentions of the parties with respect to the application of the provisions of the Federal Employee Retirement Income Security Act of 1974 (US Code, tit 29, § 1001 et seq.).